CDF LABOR LAW LLP
    Kent J. Sprinkle, State Bar No. 226971
    ksprinkle@cdflaborlaw.com
    Desiree J. Ho, State Bar No. 313250
    dho@cdflaborlaw.com
    Rosario R. Stoliker, State Bar No. 328318
    rstoliker@cdflaborlaw.com
4660 La Jolla Village Drive, Suite 740
San Diego, CA 92122
Telephone: (858) 646-0007

Attorneys for Defendants
ASRC INDUSTRIAL SERVICES, LLC, D2
(SQUARED) INDUSTRIAL SERVICES, LLC
(sued as D2 Industrial Services), and F.D.
THOMAS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL MELENA, JR., individually, and on behalf of other aggrieved employees pursuant to the California Private General Attorneys Act,<br><br>        Plaintiff,<br><br>    v.<br><br>ASRC INDUSTRIAL SERVICES, LLC, an unknown business entity; D2 INDUSTRIAL SERVICES, an unknown business entity; F.D. THOMAS, INC., an unknown business entity; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No. 2:21-cv-06769-PA(Ex)<br><br>(Removed from:<br>Los Angeles County Superior Court, Case No. 21CMCV00146)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>[Filed Concurrently Herewith Notice of Motion; Statement of Uncontroverted Facts and Conclusions of Law; Request for Judicial Notice; Declaration of Kent J. Sprinkle; Declaration of Terra Wells; Declaration of Anthony Graziano; Declaration of Stephen Araiza; and [Proposed] Judgment]<br><br>District Judge: Hon. Percy Anderson<br>Magistrate: Hon. Charles F. Eick<br>Date:   December 20, 2021<br>Time:  1:30 p.m.<br>Ctrm:  9A<br>Judge:  Hon. Percy Anderson<br><br>Action Filed:   June 10, 2021<br>Motion Cutoff: May 9, 2022<br>Disc. Cutoff:  May 2, 2022<br>Trial Date:   July 12, 2022 |

CDF LABOR LAW LLP

1890694.1

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................... 9

II.   UNCONTROVERTED FACTS ...................................................... 10

    a.    Plaintiff's Employment as a Scaffolder Was Governed by a CBA ................................................................................... 10

    b.    The CBA Covers Workers Engaged in Construction Services. ........................................................................... 11

    c.    The CBA Recognizes the Exemption Codified in Section 2699.6. ........................................................................... 11

    d.    The CBA Explicitly Waives the Requirements of PAGA and Instead Directs Parties to Resolve Alleged Violations of the Labor Code Through Its Grievance and Binding Arbitration Procedure ........................................................ 13

III.  DEFENDANTS BRING THIS TIMELY MOTION SHORTLY AFTER FILING AN ANSWER AND REMOVING THE ACTION FROM STATE COURT TO THIS DISTRICT COURT ........................................................................................ 15

IV.   LEGAL ARGUMENT ................................................................... 15

    a.    Plaintiff Cannot Meet His Burden of Establishing Any Genuine Issue of Material Fact to Survive Summary Judgment. ...................................................................... 15

    b.    Plaintiff's Sole PAGA Claim is Barred by the Statutory Exemption in Section 2699.6. ........................................ 16

        1.    PAGA Was Amended in 2018 Carving Out an Exemption For Unionized Employees in the Construction Industry. ............................................. 16

        2.    The CBA Satisfies Every Element of the Section 2699.6 Exemption. .................................................. 17

            a.    Plaintiff Was an "Employee in the Construction Industry." ................................... 17

            b.    Plaintiff's Work Was Governed by a Valid CBA in Effect Before January 1, 2025. ..................... 17

            c.    The CBA Expressly Provides for the Wages, Hours of Work, Working Conditions of Employees, and Premium Wage Rates for All Overtime Hours Worked. ............................... 18

MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

1890694.1

## TABLE OF CONTENTS (cont.)

**Page**

       d.      Plaintiff Received a Regular Hourly Pay Rate More Than Thirty Percent Above the Minimum Wage Rate. ..................................................... 18

       e.      The CBA Explicitly Prohibits All Violations of the Labor Code Redressable Under PAGA and Provides a Grievance and Binding Arbitration Procedure to Redress Them. ........................ 19

       f.      The CBA Expressly Waives the Requirements of PAGA in Clear and Unambiguous Terms. ................ 20

       g.      The CBA Authorizes the Arbitrator to Award Any and All Remedies Available Under the Labor Code. ....................................................... 20

   c.     Plaintiff's PAGA Claim Fails for the Additional Reason That It Is Based Entirely on Labor Code Claims Preempted By the LMRA ...................................................................... 21

      1.     The PAGA Claim for Unpaid Overtime is Preempted. ................................................................ 23

        a.      The Overtime Claim Exists Solely as a Result of the CBA. ............................................................... 23

        b.      The Overtime Claim Cannot be Resolved Without Interpreting the CBA. ........................ 24

      2.     Plaintiff's PAGA Claim for Minimum Wages is Preempted. ................................................................ 25

        a.      The Minimum Wage Claim Exists Solely as a Result Of The CBA. ........................................ 25

        b.      The Minimum Wage Claim Cannot be Resolved Without Interpreting the CBA. ........................ 25

      3.     The PAGA Claim for Meal Period Violations is Preempted. ................................................................ 26

        a.      The Meal Period Claim Exists Solely as a Result of the CBA. ............................................... 26

        b.      The Meal Period Claim Cannot Be Resolved Without Interpreting the CBA. ........................ 27

      4.     The PAGA Claim for Rest Period Violations is Preempted. ................................................................ 27

        a.      The Rest Period Claim Exists Solely as a

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MSJ

1890694.1

1

## <u>TABLE OF CONTENTS (cont.)</u>

2
<u>Page</u>

3          Result of the CBA. ...........................................................27

4     b.   The Rest Period Claim Requires Interpretation
          of the CBA for Resolution..............................................28

5
6   5.   Plaintiff's PAGA Claims For Payment of Timely
         And Final Wages is Preempted.........................................28

7     a.   Plaintiff's Claims for Payment of Timely and
          Final Wages Exist Solely as a Result of the
8         CBA..................................................................................28

9     b.   Plaintiff's Claims for Payment of Timely and
          Final Wages  Require Interpretation of the
10        CBA for Resolution.........................................................29

11    c.   Plaintiff's Claims for Payment of Timely and
          Final Wages Are Derivative of Preempted
12        Claims..............................................................................30

13  6.   Plaintiff's PAGA Claim for Expense Reimbursement
         is Preempted Because it Requires Interpretation of
14       the CBA. ........................................................................30

15  7.   Plaintiff's Wage Statement and Payroll Records
         Claims are Preempted Because They are Derived
16       Entirely on the Predicate Unpaid Wage, Meal, and
         Rest Period Claims..........................................................32

17
18  d.   Plaintiff's Entire PAGA Action Fails Because He Is Not an
         Aggrieved Employee..............................................................32

19 V.   CONCLUSION. ...................................................................33

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND<br>AUTHORITIES ISO MSJ

1890694.1

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>State Cases</u>

*Araquistain v. Pac. Gas & Elec. Co.*
    229 Cal. App. 4th 227 (2014).........................................................26

*Arias v. Sup. Ct*
    46 Cal. 4th 969 (2009)..................................................................33

*Cortez v. Doty Bros. Equip.*
    15 Cal. App. 5th 1 (2017).............................................................27

*Donohue v. AMN Servs., LLC*
    29 Cal. App. 5th 1068 (2018).......................................................33

*Kim v. Reins Int'l California, Inc.*
    459 P.3d 1123 (Cal. 2020)............................................................33

*Ling v. P.F. Chang's China Bistro, Inc.*
    245 Cal. App. 4th 1242 (2016)....................................................30

### <u>Federal Cases</u>

*Allis-Chalmers Corp. v. Lueck*
    471 U.S. 202 (1985) .....................................................................22

*Burnside v. Kiewit Pacific Corp.*
    491 F. 3d 1053 (9th Cir. 2007)..............................................passim

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) .....................................................................15

*Coria v. Recology, Inc.*
    63 F. Supp. 3d 1093 (N.D. Cal. 2014) .........................................27

*Curtis v. Irwin Indus., Inc.*
    913 F. 3d 1146 (9th Cir. 2019).............................................23, 24

*Eidson v. Medtronic, Inc.*
    2014 WL 1996024 (N.D. Cal. May 13, 2014) .............................32

*Estrada v. Kaiser Foundation Hospitals*
    678 Fed. Appx. 494 (9th Cir. 2017) .............................................30

*Fairbank v. Wunderman Cato Johnson*
    212 F.3d 528 (9th Cir. 2000)........................................................15

*Firestone v. Southern Cal. Gas. Co.*
    219 F. 3d 1063 (9th Cir. 2000).....................................................22

*Gillette v. Stater Bros. Markets*
    2019 WL 8017735 (C.D. Cal. Sept. 23, 2019)..................24, 28, 29

MEMORANDUM OF POINTS AND<br>AUTHORITIES ISO MSJ

1890694.1

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Hall v. Live Nation Worldwide, Inc.*
   146 F. Supp. 3d 1187 (C.D. Cal. 2015)..............................................22, 28, 29

*Knoppel v. St. Jude Med. Inc.*
   2013 WL 3803612 (C.D. Cal. May 7, 2013)...................................................32

*Kobold v. Good Samaritan Reg'l Med. Ctr.*
   832 F. 3d 1024 (9th Cir. 2016)...............................................................24, 31

*Linebarger v. Graphic Packaging International, LLC*
   2020 WL 1934958  (C.D. Cal. April 22, 2020) ............................................31

*Livadas v. Bradshaw*
   865 F. Supp. 642 (N.D. Cal. 1994)................................................................27

*Loaiza v. Kinkisharyo Int'l, LLC*
   2020 WL 5913282  (C.D. Cal. Oct. 6, 2020) .................................................24

*Loc. 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*
   369 U.S. 95 (1962) .......................................................................................22

*Marquez v. Toll Glob. Forwarding (USA) Inc.*
   2018 WL 3218102 (C.D. Cal. June 28, 2018)...................................24, 27, 28

*Mireles v. Paragon Syst. Inc.*
   2014 WL 4385453 (S.D. Cal. Sept. 4, 2014) ..........................................24, 26

*Parker v. Cherne Contracting Corporation*
   2019 WL 359989 (N.D. Cal. Jan. 29, 2019) ...........................................25, 26

*Pyara v. Sysco Corp.*
   2016 WL 3916339 (E.D. Cal. July 20, 2016) ................................................26

*Thomas v. Home Depot USA Inc.*
   527 F. Supp. 2d 1003 (N.D. Cal. 2007) ........................................................24

*Young v. Anthony's Fish Grottos, Inc.*
   830 F.2d 993 (9th Cir. 1987).........................................................................22

*Zayerz v. Kiewit Infrastructure West*
   2018 WL 582318 (C.D. Cal. Jan. 18, 2018)..................................................27

**State Statutes and Regulations**

Code of Civil Procedure section 340(a)...................................................................24

Labor Code section 1174(d) ....................................................................................23

Labor Code section 1194 ....................................................................................23, 25

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MSJ

1890694.1

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

Labor Code section 1197 ........................................................................ 23, 25

Labor Code section 1197.1 ..................................................................... 23, 25

Labor Code section 1198 ............................................................................... 23

Labor Code section 201 .......................................................................... 23, 28

Labor Code section 202 .......................................................................... 23, 28

Labor Code section 203 .......................................................................... 28, 29

Labor Code section 204 .......................................................................... 23, 29

Labor Code section 226(a) ........................................................................... 23

Labor Code section 226.7 .................................................................. 23, 26, 28

Labor Code section 226.7(b) ........................................................................ 28

Labor Code section 226.7(e) ........................................................................ 26

Labor Code section 2699(a) ............................................................. 19, 32, 33

Labor Code section 2699(e)(2) ..................................................................... 33

Labor Code section 2699(f) .......................................................................... 19

Labor Code section 2699.5 ........................................................................... 19

Labor Code section 2699.6 ................................................................... passim

Labor Code section 2699.6(a) ........................................................... 17, 18, 32

Labor Code section 2699.6(a)(1) ............................................................ 19, 20

Labor Code section 2699.6(a)(2) ................................................................. 20

Labor Code section 2699.6(a)(3) ............................................................ 20, 21

Labor Code section 2699.6(d) ...................................................................... 17

Labor Code section 2800 .............................................................................. 23

Labor Code section 2802 .............................................................................. 23

Labor Code section 510 ................................................................................ 23

Labor Code section 510(a) ........................................................................... 23

Labor Code section 512 .......................................................................... 26, 27

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MSJ

1890694.1

## <u>TABLE OF AUTHORITIES (cont.)</u>

<u>**Page(s)**</u>

Labor Code section 512(a) .......................................................................... 23

Labor Code section 512(e) ...................................................................... 26, 27

Labor Code section 514 ........................................................................... 23, 24

**<u>Federal Statutes and Regulations</u>**

Rule of Civil Procedure 56(a) ............................................................... 15, 16

**<u>Constitutions</u>**

29 U.S.C. section 185 ................................................................................... 21

1890694.1

# I. **INTRODUCTION**

Plaintiff Rafael Melena, Jr. ("Plaintiff") brings this single claim for penalties under the California Private Attorneys General Act ("PAGA") against Defendants ASRC Industrial Services, LLC ("AIS"), D2 (SQUARED) Industrial Services, LLC (sued as D2 Industrial Services) ("D2"), and F.D. Thomas, Inc. ("FDT") ("Defendants"). Defendants removed the action to this Court on the basis that Plaintiff's claim is completely preempted by federal law under the Labor Management Relations Act ("LMRA") because resolution of the claim requires interpretation of a collective bargaining agreement ("CBA") governing Plaintiff's employment. That CBA explicitly acknowledges the legislative amendment to PAGA passed in 2018 adding Section 2699.6 to the California Labor Code ("Section 2699.6"), which created an exemption wherein PAGA does not apply to any employee in the construction industry performing work under a CBA that meets the elements of that exemption.

Plaintiff is precluded from maintaining his sole PAGA claim in this action for two reasons. First, the CBA unequivocally satisfies each element of the exemption created by Section 2699.6: 1) Plaintiff worked as an "employee in the construction industry" as defined by Section 2699.6; 2) the work was performed under a valid CBA in effect before January 1, 2025; 3) the CBA expressly provides for the wages, hours of work, working conditions of employees, and premium wage rates for all overtime hours worked; 4) Plaintiff (and other employees whose employment was subject to the CBA) received a regular hourly pay rate of not less than 30 percent more than the applicable California minimum wage rate under the CBA; 5) the CBA prohibits violations of the Labor Code that would be redressable under PAGA and provides for a grievance and binding arbitration procedure to redress those violations; 6) the CBA clearly and unambiguously waives the requirements of PAGA; and 7) the CBA authorizes the arbitrator to award any and all remedies otherwise available under the Labor Code but appropriately does not authorize an

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MSJ

CDF LABOR LAW LLP

1890694.1

award of penalties that would be payable to the California Labor and Workforce Development Agency ("LWDA"). Plaintiff's PAGA claim is accordingly barred because Section 2699.6 explicitly provides that PAGA "shall not apply to" an employee in the construction industry whose work is subject to a CBA that meets each of the section's requirements. Second, the Labor Code violations Plaintiff alleges are all preempted by the LMRA. Accordingly, Defendants respectfully request that this Court grant summary judgment in Defendants' favor, and enter judgment against Plaintiff, dismissing his entire action with prejudice.

## II.     UNCONTROVERTED FACTS

### a.      Plaintiff's Employment as a Scaffolder Was Governed by a CBA.

D2 and the United Brotherhood of Carpenters and Joiners of America ("UBC") entered into an agreement, effective October 19, 2017, wherein D2 explicitly agreed "to recognize the jurisdictional claims of the International Union and to comply with the contractual wages, fringe benefits, hours and other working conditions established between the Union affiliates and the employers and employer agencies in the localities in which the Employer [D2] does any work within the jurisdiction of the International Union." ("International Agreement"). (Uncontroverted Fact No. ("UMF") 33.) Under that International Agreement, D2 is bound by and must therefore comply with all of the terms and conditions of the regional CBAs negotiated by the UBC's affiliates, including but not limited to any and all amendments and MOUs to the collective bargaining agreements negotiated by the regional affiliates. (UMF 35.)

A regional affiliate of the UBC (the Southwest Regional Council of Carpenters and Local Unions in the Twelve Southern California Counties and Nevada ("Union")) and the United General Contractors, Inc. entered into a collective bargaining agreement ("CBA"), effective from July 1, 2016 to June 30, 2022. (UMF 3-4, 40.) Because of the International Agreement, D2 is bound by the CBA's terms and conditions, including any and all amendments and MOUs to that CBA, for all

MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

work performed in the region. (UMF 33-43.)

Plaintiff was employed by D2 as a Scaffolder from August 2020 through October 2020. (UMF 1.) He was never employed by FDT or AIS. (UMF 2.) During his employment with D2, Plaintiff was a member of the Union. (UMF 6.) At all times that D2 employed Plaintiff, Plaintiff only performed work in the Southern California counties listed in the CBA, such that the terms and conditions of Plaintiff's employment were governed by the CBA. (UMF 8.)

### b. The CBA Covers Workers Engaged in Construction Services.

Under the CBA, "[t]he Contractors are engaged in construction work in Southern California and, in the performance of their present and future operations, are employing and will employ workmen under the terms of this [CBA]." (UMF 10.) The Union itself is comprised of workers covering a large scope of construction services, including carpenters, cabinet installers, floor workers, scaffold builders, insulation installers, pile drivers, and more. (UMF 11.) D2 provides industrial insulation, scaffolding, and other specialized services in the construction industry. (UMF 12.)

### c. The CBA Recognizes the Exemption Codified in Section 2699.6.

On January 4, 2019, the UBC entered into a Memorandum of Understanding, adding a PAGA waiver pursuant to Section 2699.6 to the CBA ("PAGA MOU") through a series of Recitals and Resolutions. (UMF 13.) That PAGA MOU is binding on D2. (UMF 33-43.) The Recitals and Resolutions of the CBA expressly recognize the exemption codified via Assembly Bill 1654 in September 2018:

RECITALS

WHEREAS, Governor Jerry Brown signed Assembly Bill 1654 ("AB 1654") on September 19,2018, [*sic*] which added Section 2699.6 to the Labor Code;

WHEREAS, AB 1654 exempts from the coverage of the Private Attorney Generals Act (Part 13 of Division 2 of the Labor Code (commencing with Section 2698)) ("PAGA") any "employee in the construction industry," as that term is

CDF Labor Law LLP

1890694.1

defined by Labor Code Section 2699.6(d), with respect to work performed under a valid collective bargaining agreement that meets the requirements of AB 1654, in particular, Labor Code Section 2699.6(a) (''Exemption'');

WHEREAS, the application of that Exemption requires satisfaction of certain conditions set forth in Labor Code Section 2699.6(a)(1)-(3), which mandates that a collective bargaining agreement such as this Agreement contain wages, hours of work, and working conditions of employees, premium wage rates for all overtime hours worked, and for the employee to receive a regular hourly pay rate of not less than 30 percent more than the state minimum wage rate and the following provisions:

(1) Prohibits all of the violations of the Labor Code that would be redressable pursuant to PAGA, and provides for a grievance and binding arbitration procedure to redress those violations.

(2) Expressly waives the requirements of PAGA in clear and unambiguous terms.

(3) Authorizes the arbitrator to award any and all remedies otherwise available under the Labor Code, provided that nothing in this section authorizes the award of penalties under this part that would be payable to the Labor and Workforce Development Agency.

WHEREAS, Article VI of this Agreement contains provisions authorizing the filing of a grievance which can be pursued to final and binding arbitration ("Grievance / Arbitration Machinery");

WHERAS, [*sic*] the Parties wish to avail themselves of this Exemption by agreeing to the terms of this MOU;

WHEREAS, all Recitals shall be deemed Resolutions and all Resolutions shall be deemed Recitals.

(UMF 14.)

## RESOLUTIONS

WHEREFORE, the parties clearly and unambiguously waive the provisions of PAGA, and agree that none of the provisions of PAGA shall apply to any of the employees covered by this Agreement;

WHEREFORE, the parties agree that the Union may file a grievance pursuant to this Agreement's Grievance / Arbitration Machinery and such a

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MSJ

grievance can assert violations of the Labor Code that are redressable by PAGA, which include those sections enumerated in Labor Code Section 2699.5 and Labor Code Section 2699(f) and any others to ensure application of the Exemption;

WHEREFORE, an arbitrator presiding over an arbitration conducted pursuant to the Grievance / Arbitration Machinery shall have the authority to make an award of any all [*sic*] remedies otherwise available under the Labor Code except for an award of penalties that would be payable to the Labor and Workforce Development Agency, and that any Labor Code violations asserted by the Union that are redressable by PAGA will be deemed violations of this Agreement if so found by the arbitrator;

WHEREFORE, the parties agree that the terms of this MOU meet all conditions for application of the Exemption in AB 1654.

(UMF 15.)

### d.  The CBA Explicitly Waives the Requirements of PAGA and Instead Directs Parties to Resolve Alleged Violations of the Labor Code Through Its Grievance and Binding Arbitration Procedure.

The CBA thoroughly covers the employees' wages, hours of work, and working conditions: "The Union and the Contractors, by this Agreement, intend to establish uniform rates of pay, hours of employment and working conditions for the employees covered by this Agreement." (UMF 16.) The CBA provides detailed wage schedules for all employees. (UMF 17-18.) The rates on these schedules are at least thirty percent above the applicable California minimum wage. For example, in 2020, the California minimum wage for employers with more than 25 employees was $13.00 per hour, whereas Plaintiff's hourly rate in 2020 was at least $24.33. (UMF 19, 22-26.) The lowest wage rate authorized by the CBA in 2016 was $14.14 an hour, more than thirty percent more than the State's minimum wage rate of $10.00 per hour in 2016. (UMF 20-21.) In setting the hours of work, the CBA expressly provides the start and stop times for single shifts, multiple shifts, and special shifts, and when overtime rates must be paid for certain hours worked. (UMF 27.) The CBA also covers the employees' working conditions like safety, parking, drinking water,

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MSJ

CDF Labor Law LLP

1890694.1

and jobsite transportation. (UMF 28.) The CBA provides for overtime wages, requiring employers subject to the CBA to pay employees at rates of one and one-half or double the straight time hourly rate for certain hours worked. (UMF 29.)

Not only does the CBA cover the employees' wages, hours, and working conditions, but it also sets forth a clear grievance and arbitration procedure for employees to redress any alleged violations or disputes. As the CBA lays out:

…all employee disputes concerning violations of, or arising under Wage Order 16 (except as noted in the immediately preceding paragraph), the California Labor Code Sections identified in California Labor Code section 2699.5 as amended, the California Private Attorneys General Act (Labor Code Section 2698, et seq.), and federal, state and local law concerning wage-hour requirements, wage payment and meal or rest periods, including claims arising under the Fair Labor Standards Act (hereinafter 'Statutory Dispute' or 'Statutory Disputes') shall be subject to and must be processed by the employee pursuant to the procedures set forth in this Appendix M as the sole and exclusive remedy.

(UMF 30.) Appendix M provides for the grievance and arbitration procedure to redress any violations prohibited by the Labor Code. (UMF 14-15, 30-31.)  This procedure empowers the arbitrator to issue any remedies consistent with state and federal law and orders that the arbitrator's decision is binding:

The Arbitrator shall have full authority to fashion such remedies and award relief consistent with limitations under federal and state law, and precedent established thereunder, whether by way of damages or the award of attorneys' fees and other costs, orders to cease and desist, or any and all other reasonable remedies designed to correct any violation which the Arbitrator may have found to have existed, including such remedies as provided under applicable state or federal law or regulation. The decision of the Arbitrator is final and binding upon the parties and is enforceable in a court of competent jurisdiction.

(UMF 31.) Appendix M authorizes the arbitrator to "make an award of any all [*sic*] remedies otherwise available under the Labor Code except for an award of penalties that would be payable to the Labor and Workforce Development Agency, and that any Labor Code violations asserted by the Union that are redressable by PAGA will be deemed violations of this Agreement if so found by the arbitrator." (UMF 15.)

CDF Labor Law LLP

1890694.1

## III.  **DEFENDANTS BRING THIS TIMELY MOTION SHORTLY AFTER FILING AN ANSWER AND REMOVING THE ACTION FROM STATE COURT TO THIS DISTRICT COURT.**

On June 10, 2021, Plaintiff filed his Complaint in Los Angeles County Superior Court bringing a single cause of action under PAGA seeking penalties based on allegations that Defendants failed to pay overtime, failed to provide meal periods, failed to provide rest periods, failed to pay minimum wages, failed to timely pay wages upon termination, failed to timely pay wages during employment, failed to provide complete and accurate wage statements, failed to keep complete and accurate payroll records, and failed to reimburse necessary business related expenses. (ECF 1-1, Defendants' Notice of Removal Pursuant to 28 U.S.C. Sections 1331, 1441, and 1446 ("Notice of Removal"), Ex. A, Complaint ("Complaint") at ¶¶ 55-66.) Defendants filed an Answer in state court on August 18, 2021 and removed the action to this Court on August 20, 2021. (ECF 1-3, Notice of Removal, Ex. C; ECF 1.) The discovery cut-off set by this Court's Civil Trial Scheduling Order is not until May 9, 2022. (ECF 20.) Accordingly, pursuant to Federal Rule of Civil Procedure 56(b), Defendants' Motion for Summary Judgment is timely.

## IV.  **LEGAL ARGUMENT**

### a.  **Plaintiff Cannot Meet His Burden of Establishing Any Genuine Issue of Material Fact to Survive Summary Judgment.**

Summary judgment is not a "disfavored procedural shortcut." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). "A party may move for summary judgment, identifying each claim or defense…on which summary judgment is sought." Fed. Civ. Proc. R. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. The moving party "bears the initial burden of establishing the absence of a genuine issue of material fact." *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). This burden is met by showing

CDF LABOR LAW LLP

1890694.1

1  there is "an absence of evidence to support the nonmoving party's case." *Id*. Once

2  the moving party meets this burden, the nonmoving party, "must go beyond the

3  pleadings and identify facts which show a genuine issue for trial." *Id*. Absent such a

4  showing, summary judgment is appropriate. Fed. Civ. Proc. R. 56(a).

5          Plaintiff will not be able to demonstrate any genuine issue of material fact

6  because (1) the CBA unquestionably meets every element of the PAGA exemption

7  and (2) each of Plaintiff's alleged violations of the Labor Code are preempted by the

8  LMRA. Summary judgment must be granted.

9          **b.      Plaintiff's Sole PAGA Claim is Barred by the Statutory Exemption**
10                  **in Section 2699.6.**

11          **1.      PAGA Was Amended in 2018 Carving Out an Exemption For**
                      **Unionized Employees in the Construction Industry.**
12

13          In 2018, the California legislature amended PAGA through AB 1654 to add

14  Section 2699.6, which allowed unionized employees in the construction industry to

15  waive the remedies of PAGA and, alternatively, redress those alleged violations

16  under the CBA's grievance and arbitration procedure.  Section 2699.6 states that:

17  (a) This part shall not apply to an employee in the construction industry with
     respect to work performed under a valid collective bargaining agreement in effect
18   any time before January 1, 2025, that expressly provides for the wages, hours of
     work, and working conditions of employees, premium wage rates for all overtime
19   hours worked, and for the employee to receive a regular hourly pay rate of not less
     than 30 percent more than the state minimum wage rate, and the agreement does
20   all of the following:
21
22      (1) Prohibits all of the violations of this code that would be redressable pursuant
        to this part, and provides for a grievance and binding arbitration procedure to
23      redress those violations.

24      (2) Expressly waives the requirements of this part in clear and unambiguous
25      terms.

26      (3) Authorizes the arbitrator to award any and all remedies otherwise available
27      under this code, provided that nothing in this section authorizes the award of
        penalties under this part that would be payable to the Labor and Workforce
28

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MSJ

CDF Labor Law LLP

1890694.1

1   Development Agency.

2   Section 2699.6(a).

   ### 2. <u>The CBA Satisfies Every Element of the Section 2699.6 Exemption.</u>

   #### a. Plaintiff Was an "Employee in the Construction Industry."

6   PAGA does not apply to "an employee in the construction industry" whose
7   work is subject to a CBA that meets the requirements of Section 2699.6. Section
8   2699.6(a). Section 2699.6(d) defines "employee in the construction industry" to
9   mean "an employee performing work associated with construction, including work
10  involving alteration, demolition, building, excavation, renovation, remodeling,
11  maintenance, improvement, repair work, and any other work as described by Chapter
12  9 (commencing with Section 7000) of Division 3 of the Business and Professions
13  Code, and other similar or related occupations or trades."

14  The terms and conditions of Plaintiff's employment as a Scaffolder for D2
15  from August 2020 through October 2020 were governed by the CBA between United
16  General Contractors, Inc. and the Union, a CBA binding on D2. (UMF 1-9, 32-43.)
17  Under the CBA, "[t]he Contractors are engaged in construction work in Southern
18  California and, in the performance of their present and future operations, are
19  employing and will employ workmen under the terms of this [CBA]." (UMF 10.)
20  The Union is comprised of workers covering a large scope of construction services,
21  including carpenters, cabinet installers, floor worker, scaffold builders, insulation
22  installers, pile drivers, and more. (UMF 11.) D2 provides industrial insulation,
23  scaffolding, and other specialized services in the construction industry. (UMF 12.)
24  As one of the Contractors bound by the CBA, D2 employed Plaintiff as a Scaffolder
25  to perform such construction work. (UMF 1.) Thus, Plaintiff was categorically an
26  "employee within the construction industry" as defined by Section 2699.6(d).

   #### b. Plaintiff's Work Was Governed by a Valid CBA in Effect Before January 1, 2025.

27

28

17

CDF Labor Law LLP

1890694.1

Plaintiff was employed by D2 as a Scaffolder from August through October 2020. (UMF 1.) Plaintiff performed his work under the CBA, which became effective on July 1, 2016 and will remain in effect until June 30, 2022, or before January 1, 2025, as required under Section 2699.6(a). (UMF 3-9); Section 2699.6(a).

> **c.      The CBA Expressly Provides for the Wages, Hours of Work, Working Conditions of Employees, and Premium Wage Rates for All Overtime Hours Worked.**

As required under Section 2699.6(a), the CBA expressly provides for the wages, hours of work, working conditions of employees, and premium wage rates for all overtime hours worked: "The Union and the Contractors, by this Agreement, intend to establish uniform rates of pay, hours of employment and working conditions for the employees covered by this Agreement." (UMF 16);  Section 2699.6(a). The CBA provides detailed wage schedules for all employees. (UMF 17.) In setting the hours of work, the CBA expressly provides for the start and stop times for single shifts, multiple shifts, and special shifts, as well as when overtime rates must be paid. (UMF 27.) The CBA further covers the employees' working conditions like safety, parking, drinking water, and jobsite transportation. (UMF 28.) Lastly, the CBA provides premium wage rates for all overtime hours worked, requiring employers subject to the CBA to pay employees at rates of one and one-half or double the regular straight time hourly rate for certain hours worked. (UMF 29.)

> **d.      Plaintiff Received a Regular Hourly Pay Rate More Than Thirty Percent Above the Minimum Wage Rate.**

As required by Section 2699.6(a), under the CBA, Plaintiff received a regular hourly pay rate of not less than 30 percent more than the state minimum wage rate. Section 2699.6(a). In 2020, the California minimum wage for employers with more than 25 employees was $13.00 per hour. (UMF 19.) According to the wage scales in the CBA, the Union was entitled to increase payments by approximately $2.00 per hour each year and had the right to allocate that payment across wages and/or

CDF Labor Law LLP

1890694.1

benefits. (UMF 22.) By 2020, when Plaintiff worked for D2, Plaintiff's hourly rate was at least $24.33, well over 30 percent above California's minimum wage rate of $13.00 per hour. (UMF 19, 22-26.) In fact, the lowest wage rate authorized by the CBA in 2016, when it went into effect, was $14.14 an hour, still more than 30 percent above the State's minimum wage rate of $10.00 per hour. (UMF 20-21.)

### e.   The CBA Explicitly Prohibits All Violations of the Labor Code Redressable Under PAGA and Provides a Grievance and Binding Arbitration Procedure to Redress Them.

Section 2699.6(a)(1) requires the CBA to prohibit all of the violations of the Labor Code that would be redressable pursuant to PAGA and to provide a grievance and binding arbitration procedure to redress those violations. Section 2699.6(a)(1). A PAGA action may be brought by an "aggrieved employee" for violation of "any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency…" Section 2699(a).

There is no doubt that the parties to the CBA intended to prohibit all such Labor Code violations redressable under PAGA, and to redirect any such grievances to the CBA's grievance and binding arbitration procedure. As expressly set forth in the Resolutions, "the parties agree that the Union may file a grievance pursuant to this Agreement's Grievance / Arbitration Machinery and such a grievance can assert violations of the Labor Code that are redressable by PAGA, which include those sections enumerated in Labor Code Section 2699.5 and Section 2699(f) and any others to ensure application of the Exemption…" (UMF 15.) The CBA clearly identifies in detail which employee disputes concerning wage and hour violations are properly resolved by the CBA's grievance and arbitration procedure:

…all employee disputes concerning violations of, or arising under Wage Order 16 (except as noted in the immediately preceding paragraph), the California Labor Code Sections identified in California Labor Code Section 2699.5 as amended, the California Private Attorneys General Act (Labor Code Section 2698, et seq.), and federal, state and local law concerning wage-hour requirements, wage payment and meal or rest periods, including claims arising under the Fair Labor Standards

CDF Labor Law LLP

1890694.1

Act (hereinafter "Statutory Dispute" or "Statutory Disputes') shall be subject to and must be processed by the employee pursuant to the procedures set forth in this Appendix M as the sole and exclusive remedy.

(UMF 30.) Appendix M provides for the grievance and arbitration procedure to redress any violations prohibited by the Labor Code. (UMF 14-15, 30-31.) This procedure and resulting decision is binding. (UMF 31.) Appendix M expressly prohibits violations of the Labor Code, stating that "any Labor Code violations asserted by the Union that are redressable by PAGA will be deemed violations of this Agreement if so found by the arbitrator." (UMF 15.)

Thus, the CBA also satisfies the requirements of Section 2699.6(a)(1).

> **f.     The CBA Expressly Waives the Requirements of PAGA in Clear and Unambiguous Terms.**

Section 2699.6(a)(2) requires that the CBA expressly waive the requirements of PAGA in clear and unambiguous terms.  The CBA plainly includes that waiver in the Resolutions of the CBA: "WHEREFORE, the parties clearly and unambiguously waive the provisions of PAGA, and agree that none of the provisions of PAGA shall apply to any of the employees covered by this Agreement…" (UMF 15.) The CBA goes on to state that "WHEREFORE, the parties agree that the terms of this MOU meet all conditions for application of the Exemption in AB 1654." (*Id*.) There can be no other reasonable interpretation of this explicit language. Accordingly, the CBA contains the clear and unambiguous waiver of PAGA required under Section 2699.6(a)(2).

> **g.     The CBA Authorizes the Arbitrator to Award Any and All Remedies Available Under the Labor Code.**

Section 2699.6(a)(3) requires that the CBA authorize the arbitrator to award any and all remedies otherwise available under the Labor Code but prohibits the CBA from allowing the arbitrator to award PAGA penalties that would be payable to the LWDA.  Here, the CBA empowers the arbitrator to do precisely that.

CDF Labor Law LLP

1890694.1

The CBA explicitly provides that, "[t]he Arbitrator shall have full authority to fashion such remedies and award relief consistent with limitations under federal and state law, and precedent established thereunder, whether by way of damages or the award of attorneys' fees and other costs, orders to cease and desist, or any and all other reasonable remedies designed to correct any violation which the Arbitrator may have found to have existed, including such remedies as provided under applicable state or federal law or regulation. The decision of the Arbitrator is final and binding upon the parties and is enforceable in a court of competent jurisdiction." (UMF 31.) However, the CBA clarifies in the Resolutions that this authority to award relief is limited in line with Section 2699.6(a)(3): "WHEREFORE, an arbitrator presiding over an arbitration conducted pursuant to the Grievance / Arbitration Machinery shall have the authority to make an award of any all [*sic*] remedies otherwise available under the Labor Code *except for an award of penalties that would be payable to the Labor and Workforce Development Agency*, and that any Labor Code violations asserted by the Union that are redressable by PAGA will be deemed violations of this Agreement if so found by the arbitrator…" (UMF 15 (emphasis added).)

Thus, the CBA plainly satisfies the exemption in Section 2699.6(a)(3) and Plaintiff's PAGA claim is therefore barred as a matter of law.

### c. **Plaintiff's PAGA Claim Fails for the Additional Reason That It Is Based Entirely on Labor Code Claims Preempted By the LMRA.**

Plaintiff's entire PAGA claim is subject to summary judgment for the additional reason that it is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185 *et seq*. This is because each of the alleged Labor Code violations upon which the PAGA claim is based either (1) involve rights conferred directly by the CBA or (2) require substantial interpretation of the CBA for resolution.

The United States Supreme Court has made clear that where the resolution of state law claims requires interpretation or application of a valid collective bargaining

MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

CDF Labor Law LLP

1890694.1

1  agreement, those state law claims are "preempted" by Section 301 of the LMRA.
2  *Loc. 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour*
3  *Co.,* 369 U.S. 95, 102 (1962)*; Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 211
4  (1985). In other words, Congress has clearly mandated that federal law, not state law,
5  must "be used to address disputes arising out of labor contracts." *Aliss-Chalmers*
6  *Corp.*, 471 U.S. at 209. "The preemptive force of section 301 is so powerful as to
7  displace entirely any state claim based on a collective bargaining agreement…and
8  any state claim whose outcome depends on analysis of the terms of the agreement…"
9  *Young v. Anthony's Fish Grottos, Inc*., 830 F.2d 993, 997 (9th Cir. 1987). Here,
10  because each of the underlying Labor Code violations alleged by Plaintiff are
11  preempted by the LMRA, the PAGA claim is subject to summary judgment in its
12  entirety and must be dismissed. *See Hall v. Live Nation Worldwide, Inc*., 146 F.
13  Supp. 3d 1187, 1201-02 (C.D. Cal. 2015) (dismissing PAGA claims where
14  underlying Labor Code claims were preempted under the LMRA).
15     The Ninth Circuit articulated the two-prong test to analyze whether Section
16  301 preemption applies in *Burnside v. Kiewit Pacific Corp*., 491 F. 3d 1053, 1059-60
17  (9th Cir. 2007). Under step one, the court must first consider "whether the asserted
18  cause of action involves a right conferred upon an employee by virtue of state law,
19  not by a CBA. If the right exists solely as a result of the CBA, then the claim is
20  preempted and [the court's] analysis ends there." *Id*. at 1059 (citation omitted).
21  However, if the court determines the right underlying the state claim(s) "exists
22  independently of the CBA" the court then proceeds to step two, which examines
23  whether the right is "substantially dependent on analysis of a collective bargaining
24  agreement." *Id.* at 1059-60 (internal quotation marks and citation omitted). "If such
25  dependence exists, then the claim is preempted by section 301; if not, then the claim
26  can proceed under state law." *Id. See also Firestone v. Southern Cal. Gas. Co*., 219
27  F.3d 1063, 1066-67 (9th Cir. 2000). In determining whether the second prong is met,
28  the Court must evaluate whether the claim can be resolved by "'look[ing] to' versus

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MSJ

CDF LABOR LAW LLP

1890694.1

interpreting the CBA…If the latter, the claim is preempted; if the former, it is not." *Burnside,* 491 F.3d at 1060.

For the reasons set forth below, Plaintiff's claim for PAGA penalties, which is entirely based on (1) California Labor Code §§ 510, and 1198 (Failure to Pay Overtime); (2) Labor Code §§ 226.7 and 512(a) (Failure to Provide Meal Periods); (3) Labor Code § 226.7 (Failure to Provide Rest Periods); (4) Labor Code §§ 1194, 1197, and 1197.1 (Failure to Pay Minimum Wages); (5) Labor Code §§ 201 and 202 (Failure to Timely Pay Wages Upon Termination); (6) Labor Code § 204 (Failure to Timely Pay Wages During Employment); (7) Labor Code § 226(a) (Failure to Provide Complete and Accurate Wage Statements); (8) California Labor Code § 1174(d) (Failure to Keep Complete and Accurate Payroll Records); and (9) California Labor Code §§ 2800 and 2802 (Failure to Reimburse Necessary Business-Related Expenses and Costs), are preempted under Section 301 of the LMRA.

### 1.   **The PAGA Claim for Unpaid Overtime is Preempted.**

#### a.   **The Overtime Claim Exists Solely as a Result of the CBA.**

The California Labor Code expressly provides that its own overtime provisions do not apply where a collective bargaining agreement sufficiently stands in its place, such that preemption shall apply under step one of the *Burnside* analysis. *See Curtis v. Irwin Indus., Inc*., 913 F.3d 1146, 1155 (9th Cir. 2019). While Labor Code section 510(a) sets forth the general requirements for paying overtime premiums, Labor Code section 514 provides an exemption from that rule as follows:

> Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

The CBA here satisfies this statutory exemption because it expressly provides for wages, hours of work, and working conditions (UMF 16-18, 27, 28); provides

MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

premium wage rates for all overtime hours worked (UMF 29); and provides a regular hourly rate of pay of not less than 30 percent more than the applicable California state minimum wage at all relevant times.[1] (UMF 17-23).

Because the CBA satisfies the exemption provided in Labor Code section 514, Plaintiff's right to overtime compensation exists solely as a result of the CBA.  *See Curtis*, 913 F.3d at 1155; *Loaiza v. Kinkisharyo Int'l, LLC*, 2020 WL 5913282, at *20 (C.D. Cal. Oct. 6, 2020) (dismissing section 510 claim where preempted by the LMRA); *Gillette v. Stater Bros. Markets*, 2019 WL 8017735, at *7 (C.D. Cal. Sept. 23, 2019) (same); *Marquez v. Toll Glob. Forwarding (USA) Inc*., 2018 WL 3218102, at *2 (C.D. Cal. June 28, 2018) (granting motion to dismiss because overtime claim barred where all requirements of § 514 are met); *Mireles v. Paragon Syst. Inc*., 2014 WL 4385453, at *5 (S.D. Cal. Sept. 4, 2014) (granting summary judgment to defendants on overtime claims where section 514 requirements met). Consequently, the LMRA preempts Plaintiff's unpaid overtime wage claim pursuant to step one of *Burnside* and Plaintiff's PAGA claim based thereon fails as a matter of law. *See Mireles v. Paragon Systems, Inc.*, 2014 WL 4385453 at *5 (S.D. Cal. Sept. 4, 2014).

### b.  The Overtime Claim Cannot be Resolved Without Interpreting the CBA.

Because the CBA itself contains such extensive provisions for what constitutes overtime work and the rates at which overtime is to be paid (UMF 17-18, 27, 29), under step 2 of *Burnside,* this unpaid overtime claim cannot be resolved without interpreting the CBA, which also includes its use of industry terms and the practices of the shop incorporated therein. *See Kobold v. Good Samaritan Reg'l Med. Ctr*., 832

---

[1] Because Plaintiff's PAGA claim is subject to a one-year statute of limitations (*see* Cal. Code Civ. Proc. § 340(a); *Thomas v. Home Depot USA Inc*., 527 F. Supp. 2d 1003, 1007-08 (N.D. Cal. 2007)), the claim period on this claim runs back to April 6, 2020—one year and 65 days before filing the Complaint. (*See* ECF No. 1-1, Ex. A). The California minimum hourly wage in 2020 was $13.00. (UMF 19.) Thus, to satisfy section 514's exemption, the CBA must have provided hourly wages above $16.90.  From 2020 to present, D2 has paid all hourly, non-exempt Union employees working in California pursuant to the CBA an hourly rate of $16.90 or more. (UMF 17, 22-23.)

MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

F.3d 1024 (9th Cir. 2016) ("under longstanding labor law principles . . . the practices of the industry and the shop . . . [are] equally a part of the [CBA] although not expressed in it"). Such interpretations of industry and shop terms will be inevitable in determining what conduct constituted overtime work, such that the Court will be required to interpret the CBA and its terms to resolve this claim. As a result, any claim for overtime is also preempted under step two of *Burnside*.

### 2. **Plaintiff's PAGA Claim for Minimum Wages is Preempted.**

#### a. **The Minimum Wage Claim Exists Solely as a Result Of The CBA.**

Plaintiff claims in conclusory fashion that, "Defendants failed to pay Plaintiff and the other aggrieved employees at least minimum wages for all hours worked" and references Labor Code §§ 1194, 1197, and 1197.1 as the basis for that claim. (Compl., ¶¶ 43, 58). However, the CBA itself already provides for wages well in excess of the minimum wage for all hours worked. (UMF 17-18, 27). Consequently, any potential claim for unpaid wages arises entirely from the CBA and is preempted under step one of *Burnside*. *Parker v. Cherne Contracting Corporation*, 2019 WL 359989, at *4 (N.D. Cal. Jan. 29, 2019) (inviting a motion for summary judgment "[i]f it becomes clear at a later stage that Plaintiff's minimum wage claim necessarily sounds in unpaid wages inseparable from the CBA").

#### b. **The Minimum Wage Claim Cannot be Resolved Without Interpreting the CBA.**

Similar to the overtime provisions discussed above, the CBA itself contains extensive provisions for what constitutes hours worked and the rates at which time worked is to be paid (UMF 17-18, 27, 29), such that under step two of *Burnside,* this unpaid minimum wage claim cannot be resolved without interpreting the CBA. It is inevitable that in determining what constituted regular hours worked, the Court will be required to interpret CBA and its terms as used in the industry to resolve this claim. As a result, any claim for overtime is preempted under step two of *Burnside*.

CDF Labor Law LLP

1890694.1

### 3.     The PAGA Claim for Meal Period Violations is Preempted.

#### a.     The Meal Period Claim Exists Solely as a Result of the CBA.

In California, the requirements for meal periods are set forth at subdivisions (a) and (b) of Labor Code § 512. These sections, however, do not apply when both of the following conditions are satisfied:

(1) The employee is covered by a valid collective bargaining agreement.
(2) The valid collective bargaining agreement expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.

Cal. Lab. Code § 512(e) (emphasis added).[2] Here, the CBA satisfies this statutory exemption, as it expressly provides for wages, hours of work, and working conditions, and provides premium wage rates for all overtime hours worked and a regular rate of pay 30 percent more than the applicable minimum wage. (UMF 16-18, 27-29.) It also expressly provides for meal periods (UMF 44) and for final and binding arbitration of any controversy arising out of the CBA. (UMF 30-31, 45.)

Because the CBA satisfies section 512(e)'s exemption, Plaintiff has no state law claim for meal periods (*Parker*, 2019 WL 359989, at *4) and Plaintiff's right to meal periods exists solely as the result of the CBA. *See Mireles*, 2014 WL 4385453 at *5-6 (granting summary judgment as to meal period claims that arose under the CBA); *Pyara v. Sysco Corp.*, 2016 WL 3916339, at *3-4 (E.D. Cal. July 20, 2016) (granting judgment on pleadings because plaintiff's meal break claim failed as a matter of law per section 512(e) exemption); *Araquistain v. Pac. Gas & Elec. Co.*, 229 Cal. App. 4th 227, 236, 238 (2014) (granting summary judgment to defendant

---

[2] Plaintiff's claim for meal period violations pursuant to Labor Code § 226.7 does not change this analysis as Section 226.7(e) specifically provides that its meal period protections do not apply to an employee who is exempt from meal period requirements pursuant to any other state law.

MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

1   when exemption criteria met under Section 512(e)); *Zayerz v. Kiewit Infrastructure*
2   *West*, 2018 WL 582318, at *4 (C.D. Cal. Jan. 18, 2018) (granting summary judgment
3   per application of Section 512(e) exemption); *Marquez*, 2018 WL 3218102, at *3-4
4   (granting motion to dismiss meal break claim on section 301 preemption grounds).
5   Thus, the meal period claim is preempted under step one of *Burnside*. *See Coria v.*
6   *Recology, Inc.*, 63 F. Supp. 3d 1093, 1097 (N.D. Cal. 2014).

### b.   The Meal Period Claim Cannot Be Resolved Without Interpreting the CBA.

9        Plaintiff's meal period claim also fails under step two of *Burnside* because the
10   Court cannot determine compliance with Labor Code § 512 without analyzing the
11   applicable terms of the CBA related to meal periods. *See Marquez*, 2018 WL
12   3218102, at *3-4.  Specifically, here, Plaintiff claims that aggrieved employees did
13   not receive all meal period premiums owed to them. (Compl., ¶ 36.) Such meal
14   period premiums are based upon Plaintiff's union wage rate, which is determined by
15   Plaintiff's job classification. (UMF 17-18). The court must examine and interpret the
16   CBA to determine which job classification and level Plaintiff falls under based upon
17   Plaintiff's job duties, title, union status and seniority, in order to determine the
18   corresponding wage rate upon which meal premiums are based. Thus, this claim will
19   require interpretation of the CBA in order to determine the correct rate of pay. *See*
20   *Livadas v. Bradshaw*, 865 F.Supp. 642 (N.D. Cal. 1994); DLSE Enforcement and
21   Interpretations Policies § 36.2.2.1. Because the meal period claim cannot be resolved
22   without interpreting the CBA, it is preempted under step two of *Burnside*.

### 4.   The PAGA Claim for Rest Period Violations is Preempted.

### a.   The Rest Period Claim Exists Solely as a Result of the CBA.

25        The CBA expressly provides for rest periods which are governed solely by the
26   grievance and arbitration procedures set forth in therein. (UMF 30-31, 45-46). *See*
27   *Cortez v. Doty Bros. Equip.*, 15 Cal.App.5th 1 (2017) (disputes arising under Wage

28

CDF LABOR LAW LLP

1890694.1

Order 16 are to be resolved under the grievance and arbitration procedure of the CBA). Thus, Plaintiff's right to rest periods exists solely as a result of the CBA and his rest break claim is preempted under step 2 of *Burnside.*

### b.   The Rest Period Claim Requires Interpretation of the CBA for Resolution.

Plaintiff seeks PAGA penalties for alleged missed rest periods and failure to pay rest period premiums, in violation of Labor Code section 226.7. (Compl., ¶¶ 36, 57.) However, rest period premiums are based upon Plaintiff's union wage rate, which is determined by Plaintiff's job classification. Cal. Lab. Code 226.7(b); (UMF 17-18). Thus, the court must examine and interpret the CBA to determine Plaintiff's job classification and level in order to determine the corresponding wage rate upon which rest premiums are calculated. Thus, Plaintiff's rest period claim is preempted under step two of *Burnside. See Marquez*, 2018 WL 3218102, at *3-4.

### 5.   Plaintiff's PAGA Claims For Payment of Timely And Final Wages is Preempted.

### a.   Plaintiff's Claims for Payment of Timely and Final Wages Exist Solely as a Result of the CBA.

"Labor Code Sections 201-204 do not apply if a collective bargaining agreement provides for different pay arrangements." *Gillette,* 2019 WL 8017735 at *6 (citing Cal. Lab. Code § 204(c)) ("when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees."). Thus, where a CBA provides alternate pay arrangements from those contained in the Labor Code, wage payment rights arise under the CBA and not state law. *See Hall,* 146 F. Supp. 3d at 1201-02 (finding Labor Code section 203 claim preempted under the LMRA at step 1 of *Burnside,* where the parties agreed to alternate wage payment provisions).

Here, Plaintiff alleges Defendants failed to timely pay final wages, in violation of Labor Code sections 201-203. (Compl., ¶ 59.) But the CBA provides that "When

men are laid off or discharged, they must be paid wages due them at the time of layoff or discharge." (UMF 47.) The CBA also provides a penalty for failure to do so. (UMF 48.) Plaintiff also alleges that Defendants failed to timely pay wages while workers were still employed in violation of Labor Code § 204. (Complaint, ¶ 60.) However, the CBA provides for the timely payment of wages while employed. Specifically, "All wages shall be paid on a designated weekly payday and in no event shall the Contractor withhold more than five (5) working days. If the regular payday falls on a holiday, the employees shall be paid on the next regular workday. Employees shall be paid prior to the ending of their regular shift." (UMF 49.) The CBA also provides a penalty for unpaid wages: "In the event an employee is not paid prior to the ending of his regular scheduled shift, he shall be compensated in increments of one-half (½) hour at the applicable overtime rate until such time as he does receive his pay." (UMF 49.)

Thus, the CBA thoroughly sets forth alternate provisions for the timely payment of wages from those contained in the Labor Code, applying to both the regular payment of wages as well as payment of final wages. It even provides an alternative penalty for failure to comply with its terms, which appears more generous than the penalties provided for in Labor Code section 203. Accordingly, Plaintiff's wage payment rights arise under the CBA and not state law, and are therefore preempted. *Gillette,* 2019 WL 8017735 at *6; *Hall,* 146 F. Supp. 3d at 1201-02.

**b.** **Plaintiff's Claims for Payment of Timely and Final Wages Require Interpretation of the CBA for Resolution.**

Plaintiff's claims for payment of timely and final wages are also preempted at step two of *Burnside* because they will require interpretation and application of the CBA terms. For example, to determine if any wages were not timely paid, the court will first be required to determine how much wages were actually owed, which will require inquiry into Plaintiff's union wage rate, which is determined by Plaintiff's job classification. (UMF 17-18.) The court will be required to examine and interpret

MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

CDF LABOR LAW LLP

1890694.1

the CBA to determine Plaintiff's job classification and level based upon Plaintiff's job duties, title, union status and seniority level, in order to determine the corresponding wage rate upon which timely and final wages must be calculated. Thus, the timely and final wage claims are too intertwined the CBA to be resolved without significant analysis of the CBA and are therefore preempted.

### c.    Plaintiff's Claims for Payment of Timely and Final Wages Are Derivative of Preempted Claims.

Finally, to the extent Plaintiff's claims for timely and final wages are derivative of the substantive claims discussed above for unpaid overtime and meal and rest period premiums, the claim is preempted for the same reasons as the overtime claim. *See*, *e.g.*, *Ling v. P.F. Chang's China Bistro, Inc*., 245 Cal. App. 4th 1242, 1261 (2016) ("[A] section 203 claim is purely derivative of 'an action for the wages from which the penalties arise'"); *Estrada v. Kaiser Foundation Hospitals*, 678 Fed. Appx. 494, 497 (9th Cir. 2017) (unpublished) (finding that where a cause of action derives from a preempted claim, the derivative cause of action also fails).

### 6.    Plaintiff's PAGA Claim for Expense Reimbursement is Preempted Because it Requires Interpretation of the CBA.

Plaintiff claims in cursory form that "Defendants' [failed] to reimburse Plaintiff and the other aggrieved employees for necessary business-related expenses and costs in accordance with California Labor Code sections 2800 and 2802." (Complaint, ¶ 63.) Particular expenses are not specifically alleged in the Complaint. The CBA must be interpreted to determine whether these expenses fall within its provisions, which delineate the necessary expenses of employees and the employer.

First, regarding "Tools and Equipment", the CBA provides as follows:

Carpenters, apprentices and pre-apprentices shall furnish their own tools, but shall not furnish, rent or lease saw horses, ladders, miter boxes, electric drills, automotive equipment to be used for the purpose of hauling or delivering individual Employers material or equipment, or any kind of power, cordless, or battery operated machines or saws. Each employee shall arrive on the job with tools in proper conditions. To implement this Section, the individual Carpenter shall provide a toolbox with a

lock. If all or any part of the employee's tools are lost by reason of failure of the individual Employer to provide such a secure place, or by fire, flood, or theft involving unlawful entry while in the secure place designated by the individual Employer, the individual Employer shall reimburse such employee for any such loss.

(UMF 50.) Next, a separate safety policy provides:

The Contractor will furnish for the use of his employees any necessary waterproof or foul weather gear, safety helmets, or any other necessary protective clothing as required by CAL-OSHA or the Contractor. Employees may be held momentarily responsible for such items properly checked out to them with the understanding that such items broken, worn out in normal use, or lost in a manner beyond the control of the employee are excluded.

(UMF 51.)  Plaintiff's claim against D2 necessarily involves interpreting these provisions to determine if the CBA covers the types of expenses he alleges D2 failed to reimburse. For example, on a more granular level the Court must determine, likely from the custom and practice in the industry, issues such as whether Plaintiff's claim for reimbursement of costs for certain types of tools and equipment are covered by the CBA. In addition to interpreting the language in the CBA, resolving such questions will involve analysis of the custom and practice of the parties, deemed part of the CBA for purposes of the preemption analysis. *See Kobold,* 832 F.3d at 1024.

        The CBA must also be interpreted to determine whether it required D2, as an individual employer, to provide some of the items Plaintiff contends should have been reimbursed, versus requiring Plaintiff to furnish such items for himself. *See Linebarger v. Graphic Packaging International, LLC,* 2020 WL 1934958, at *6 (C.D. Cal. April 22, 2020) (whether cell phone expense constituted a "tool" under the CBA created an interpretation issue satisfying step two of the *Burnside* analysis).

        In sum, resolution of this claim will involve determining whether Defendants met their obligations under this section of the CBA. Thus, Section 301 preempts Plaintiff's expense reimbursement claim under the second prong of *Burnside. See Linebarger,* 2020 WL 1934958 at *6.

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MSJ

**7.** **Plaintiff's Wage Statement and Payroll Records Claims are Preempted Because They are Derived Entirely on the Predicate Unpaid Wage, Meal, and Rest Period Claims.**

Wage statement and payroll records claims derived from preempted claims are subject to summary judgment for the same reasons as the predicate preempted claims. *See Eidson v. Medtronic, Inc*., 2014 WL 1996024, at *23 (N.D. Cal. May 13, 2014) (claims that are derivative of preempted claims are likewise preempted); *Knoppel v. St. Jude Med. Inc*., 2013 WL 3803612, at *3 (C.D. Cal. May 7, 2013) (dismissing claims that are derivative of preempted claims). Plaintiff's wage statement and payroll records claims depend entirely on the outcome of his unpaid overtime, meal period, and rest period claims. (Compl., ¶¶ 36-37.) Plaintiff alleges the wage statements and payroll records were inaccurate in that overtime wages and meal and rest period premiums were not included. (*Id.*) This claim is derivative of the allegations that: (1) Defendants failed to pay overtime wages for hours worked; and (2) Defendants failed to provide meal and rest periods to Plaintiffs. (*Id.*) Ultimately, because the overtime and meal and rest claims are preempted by the LMRA, Plaintiff cannot prevail on a wage statement or payroll claim which is derivative of the preempted claims.

**d.** **Plaintiff's Entire PAGA Action Fails Because He Is Not an Aggrieved Employee.**

Only "aggrieved employees" may bring a civil action under PAGA. Section 2699(a). The exemption codified by AB 1654 is clear: "*This part shall not apply* to an employee in the construction industry with respect to work performed under a valid collective bargaining agreement in effect any time before January 1, 2025" if the CBA meets the requirements of the exemption. Section 2699.6(a) (emphasis added). Plaintiff performed all his work as an "employee in the construction industry" for D2 under a CBA that qualifies for the exemption under Section 2699.6. Thus, the entire PAGA never applied to Plaintiff pursuant to Section 2699(a), and

CDF Labor Law LLP

1890694.1

1  Plaintiff was never eligible to bring this PAGA-only action.

2      Also, as a member of the Union working under the terms of the applicable
3  CBA, Plaintiff's claims are entirely exempted and preempted as discussed above,
4  such that he cannot proceed on behalf of others as the representative in a PAGA
5  action. PAGA provides that penalties can be awarded only on behalf of "aggrieved
6  employees." Section 2699(e)(2). *Donohue v. AMN Servs., LLC,* 29 Cal. App. 5th
7  1068, 1100 (2018) ("Stated differently, Donohue did not establish that *she* was an
8  aggrieved employee—a prerequisite to asserting a PAGA claim (§ 2699, subds. (a),
9  (g)(1) )—because she did not establish that "one or more of the alleged [Labor Code]
10  violations was committed" against her (§ 2699, subd. (c) ).").

11      A PAGA representative action need not be brought as a class action, but it
12  must be brought by an "aggrieved" employee acting as a representative on behalf of
13  other "aggrieved" employees and within the one year statute of limitations. *Arias v.*
14  *Sup. Ct* (2009) 46 Cal. 4th 969, 980-981; Section 2699(a), (i). PAGA defines an
15  "aggrieved employee" as "any person who was employed by the alleged violator and
16  against whom one or more of the alleged violations was committed." Section
17  2699(c). An employee who is not "aggrieved" by the Labor Code violation alleged in
18  the PAGA claim has no standing to bring the claim or collect penalties. Section
19  2699(a), (i); *Kim v. Reins Int'l California, Inc.,* 459 P.3d 1123, 1127 (Cal. 2020).

20      Here, Plaintiff did not experience any of the alleged violations under state law,
21  because his claims are (1) exempted from PAGA and (2) arise under or are
22  controlled entirely by the CBA and are therefore preempted. Consequently, he cannot
23  proceed on behalf of himself or other allegedly aggrieved employees.

## V.    **CONCLUSION.**

25      For the foregoing reasons, Defendants respectfully request that this Court
26  grant Defendants' Motion for Summary Judgment.

27

28

CDF LABOR LAW LLP

1890694.1

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MSJ

1   Dated: November 5, 2021       CDF LABOR LAW LLP
2                                       Desiree J. Ho
                                        Rosario R. Stolker

4                            By: _____
5                                    Kent J. Sprinkle
                Attorneys for Defendants
6                 ASRC INDUSTRIAL SERVICES, LLC, D2
                (SQUARED) INDUSTRIAL SERVICES, LLC (sued
7                 as D2 Industrial Services), and F.D. THOMAS, INC.

CDF Labor Law LLP

1890694.1