LAWYERS FOR JUSTICE
   Edwin Aiwazian, State Bar No. 232943
   edwin@calljustice.com
   Jacob Karczewski, State Bar No. 268295
   jacob@calljustice.com
   Charles Sweeny, State Bar No. 325167
   charles@calljustice.com
410 West Arden Avenue, Suite 203
Glendale, CA 91203
Telephone: (818) 265-1020

Attorneys for Plaintiff
RAFAEL MELENA, JR.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL MELENA, JR., individually, and on behalf of other aggrieved employees pursuant to the California Private General Attorneys Act,<br><br>    Plaintiff,<br><br>v.<br><br>ASRC INDUSTRIAL SERVICES, LLC, an unknown business entity; D2 INDUSTRIAL SERVICES, an unknown business entity; F.D. THOMAS, INC., an unknown business entity; and DOES 1 through 100, inclusive,<br><br>    Defendants. | Case No. 2:21-cv-06769 PA(Ex)<br><br>(Removed from:<br>Los Angeles County Superior Court,<br>Case No. 21CMCV00146)<br><br>**PLAINTIFF'S LR 37-2.3 SUPPLEMENTAL MEMORANDUM IN RESPONSE TO DEFENDANTS' "JOINT" STATEMENT AND REQUEST FOR PROTECTIVE ORDER**<br><br>District Judge: Hon. Percy Anderson<br>Magistrate Judge: Hon. Charles F. Eick<br><br>Date:    December 3, 2021<br>Time:   9:30 a.m.<br>Place:  750 7th Floor – VIA ZOOM<br><br>Action Filed:  June 10. 2021 |

## I. INTRODUCTION[1]

Defendants' Motion for Protective Order must be denied in its entirety for several reasons. First and most fundamentally, Defendants completely failed to meet and confer as required under the Local Rules. Not only did Defendants never send a Local Rule 37-1 letter, they failed to ever meet and confer regarding a single item, issue, discovery request or topic. Indeed, the entire 128-page "joint" statement filed with the Court is Defendants' contribution alone. Instead of ever discussing with Plaintiff why a specific document request or topic should be delayed, they sent Plaintiff a 112-page version of the "joint" statement, never set up a call to meet and confer, and then moved forward with filling their motion. This is far from what is required of Defendants before seeking relief from this Court. Defendants' conduct is so far out of bounds that Plaintiff respectfully requests that the Court consider issuing monetary sanctions against Defendants under Local Rule 37-4.

Even if the Court were to consider the substance of Defendants' Motion for Protective Order, Defendants fail to set forth–let alone satisfy–any test for staying discovery pending the resolution of their Motion for Summary Judgment. Defendants ignore any analysis of comparative harms facing the parties if a stay were to issue and fail to explain how their motion could dispose of the entire action even if it were granted. Two Defendants are not signatories to the collective bargaining agreement upon which Defendants' motion turns and there is no explanation or argument for how F.D. Thomas, Inc. and ASRC Industrial Services, LLC can avail themselves of the agreements terms.

Since Plaintiff served two deposition notices on October 5 Defendants have

---

[1] Plaintiff received the Court's Minute Order this morning noting that Plaintiff did not file an "Opposition" to the Motion for Protective Order. Plaintiff never received a "Motion" from Defendants, only a Notice of Motion and a "Joint Statement" that Plaintiff did not contribute to such that Plaintiff intended to file a Supplemental Memorandum per Local Rule 37-2.3, which he submits here.

maintained the belief that they can dictate what discovery Plaintiff may conduct and when. The Federal Rules of Civil Procedure do not sanction such a constrictive approach to civil discovery and neither should this Court. Respectfully, the Court should deny Defendants' Motion for Protective Order in its entirety.

## II. STATEMENT OF FACTS AND MEET AND CONFER RECORD

Defendants' recollection of the meet and confer process is inaccurate and unsupported by the written communications in evidence. Plaintiff served Defendants with notices for the Terra Wells and Rule 30(b)(6) depositions on October 5, 2021.[2] Karczewski Decl., ¶ 2. At that time, Ms. Wells was the sole person to testify regarding the scope and applicability of the alleged collective bargaining agreement ("CBA") that served as the basis for Defendants' removal. *Id.* The same CBA stands as the sole justification for Defendants' pending Motion for Summary Judgement. The Rule 30(b)(6) deposition noticed sought to depose Defendant D2 (Squared), Industrial Services ("D2") on several topics. Defendants now claim that D2 was Plaintiff's sole employer. Both deposition notices included several narrowly tailored document requests. *Id.* When Plaintiff served the deposition notices he offered to meet and confer about timing and scope of the depositions. *Id.*

Despite Defendants' claim otherwise,[3] the parties did not ever discuss anything aside from scheduling of either deposition and the vague possibility of narrowing the Rule 30(b)(6) deposition. Karczewski Decl., ¶¶ 4-8. The parties did not discuss specific scope issues, documents requests, or topics to be covered during any telephonic meet and confer or in written communications before Defendants filed

---

[2] All dates refer to the year 2021 unless otherwise indicated.

[3] Defendants appear to misconstrue what transpired during the meet and confer process. For example, Kent Sprinkle states that the parties "met and conferred telephonically . . . . regarding . . . Plaintiff's deposition notices to Terra Wells and D2." Sprinkle Decl., ¶ 15. While the parties discussed scheduling and generally the possibility of potentially narrowed depositions at no point did they meet and confer about specific issues, document requests or topics prior to the filing of Defendants' Motion for Protective Order. Karczewski Decl., ¶ 5.

their motion. *Id*. The only item the parties discussed prior to the filing of Defendants' motion was Defendants' belief that Plaintiff should be barred from conducting discovery until Defendants Motion for Summary Judgment was decided. *Id*.

Likewise, Defendants never sent Plaintiff a Rule 37-1 letter specifically outlining Defendants' positions with supportive authorities for each issue and request between the parties. Karczewski Decl., ¶¶ 6-8. The only "letter" Defendants sent was provided late in the afternoon of October 21, and demanded that by the *next day* Plaintiff must "withdraw" the depositions notices or "Defendants will be required to continue with this process of seeking appropriate Court relief." Sprinkle Decl., Exhibit K at p. 2. Plaintiff substantively responded to the letter on October 26 via email and offered to continue meet and confer. Karczewski ¶ 7. No further effort was made by Defendants to meet and confer until the afternoon of October 28, when the parties' counsel had a phone call. *Id*. at ¶ 9. The parties, again, never discussed any specific discovery requests or issues during the October 28 call, nor any authorities that would support Defendants' Motion for Protective Order. *Id*. Nonetheless, in an effort to avoid and narrow potential motion practice ***Plaintiff sent Defendants an email proposing the following significant compromises: (1) to move the Wells Deposition three weeks, (2) to move the Rule 30(b)(6) deposition several weeks, (3) to narrow the Rule 30(b)(6) deponent to testify on only seven topics, and (4) to accept documents in lieu of testimony on up to eight out of 37 topics***. *Id*. Defendants never substantively responded to this offer. *Id*.

Instead, at near midnight on October 28, Defendants sent a 112-page "joint statement" that purported to relate to the depositions of Ms. Wells and the Rule 30(b)(6) deposition. *Id*. at ¶ 10. Plaintiff's counsel was on leave on Friday, October 29, and responded the very next business day and articulated several ways in which Defendants had failed to comply with the Local Rules in bringing a motion for protective order. *Id*. Defendants did not respond, instead they called Plaintiff's

counsel without notice late on November 4. *Id*. at ¶ 11. During the call, Defendants' counsel repeatedly demanded that Plaintiff simply withdraw both deposition notices. *Id*. Plaintiff's counsel explained that they could not withdraw the notices because Defendants' counsel's position remained consistent; namely, that no discovery was proper until the Motion for Summary Judgment was decided. Plaintiff's counsel explained that Plaintiff set forth a proposal to avoid motion practice on October 28 that included significant compromises and that Defendant should respond to the proposal in hopes the parties could avoid motion practice. *Id*. Defendants refused to even respond. The parties did not discuss any specific items, requests or topics during the November 4 call. *Id*. Instead, Defendants filed their Motion for Protective Order . *Id*.

### III. LEGAL STANDARDS

Defendants' Motion for a Protective Order is really a disguised motion to stay discovery until its Motion for Summary Judgment is ruled upon. " 'The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending.'" *Centerline Housing Partnership I, L.P. v. Palm Communities*, 2021 WL 2493251 at *2 (C.D. Cal. May 26, 2021), quoting *Mlenjnecky v. Olympus Imaging Am., Inc*., 2011 WL 489743, at *6 (E.D. Cal. Feb. 7, 2011). "A party seeking a stay of discovery carries the heavy burden of making a 'strong showing' why discovery should be denied." (9th Cir. 1975). "The moving party must show a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements." *Gray v. First Winthrop Corp*., 133 F.R.D. 39, 40 (N.D. Cal. 1990). "Idle speculation" that a party's dispositive motion will proceed does not satisfy the moving party's heavy burden. *Id*. "The competing interests that a district court must weigh in deciding whether to grant a stay include the following: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in

terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'" *Centerline*, 2021 WL 2493251 at *2, quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936) (referred to herein as the "*Landis* test"). "The Ninth Circuit Court of Appeals has stated that "a party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted.'" *Mlenjnecky*, 2011 WL 489743, at *4, quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003).

## IV. ARGUMENT

**a.** *Defendants Entirely Failed to Comply with LR 37-1 such that their Motion Must be Denied*.

Under Local Rule 37-1, parties must "confer in a good-faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible." *EZ Travel Distribution, Inc. v. Doremo Glob. Corp.*, 2021 WL 4497886, at *2 (C.D. Cal. Aug. 3, 2021). It is well-established that a district court has discretion to deny discovery motions for failure to comply with Local Rule 37-1. *Id. citing Pina v. Lewis*, 717 F. App'x 739, 740 (9th Cir. 2018) (finding that a district court may properly deny a motion to compel "for failing to comply with local rules") and *Tri-Valley CARES v. U.S. Dep't of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012) ("Denial of a motion as the result of a failure to comply with local rules is well within a district court's discretion."). A "major purpose" of the meet and confer process is to "ensure the Court has, in one place, all the moving party's arguments and all the opposing party's responses". *O. L. v. City of El Monte*, 2021 WL 926105, at *6 (C.D. Cal. Jan. 11, 2021), review denied, 2021 WL 1031146 (C.D. Cal. Mar. 15, 2021), appeal dismissed sub nom. *O. L. v. Jara*, 2021 WL 2472366 (9th Cir. Apr. 19, 2021).

The meet and confer process starts with the Local Rule 37-1 letter. "A compliant letter is a prerequisite to all that comes after it in L.R. 37 to set the parameters of the conference designed to attempt, in good faith, to eliminate as many

disputes as possible between the parties." *Insight Psychology and Addiction, Inc. v. City of Costa Mesa*, 2021 WL 878467 at *4 (C.D. Cal. Jan. 15, 2021); *see also International Business Machines Corporation v. Zillow Group, Inc.*, 2020 WL 3977779 at *2-3 (C.D. Cal. Apr. 13, 2020) (finding that even if a party generally raises objections such an effort does not satisfy Local Rule 37-1's specificity requirement where each issue and request must be addressed in the Rule 37-1 letter).

It is the moving party's burden to include sufficient specificity in their letter or their motion will be denied. *Williams v. J.B. Hunt Transp., Inc.*, 2021 WL 3625337, at *3 (C.D. Cal. May 19, 2021); *Whitaker v. Aviano, LLC*, 2020 WL 4787999, at *3 (C.D. Cal. June 15, 2020); *Kevin So v. Land Base, LLC*, 2010 WL 11515456, at *2 (C.D. Cal. June 9, 2010). Even then, a compliant letter does not complete the meet and confer process (*Est. of Najera-Aguirre v. Cty. of Riverside*, 2018 WL 10152556, at *3 (C.D. Cal. Dec. 7, 2018)), the moving party must still schedule a meet and confer conference to be held within a ten-day period (*Zucchella v. Olympusat, Inc.*, 2021 WL 4706541, at *2 (C.D. Cal. Mar. 30, 2021)). "It is not sufficient for a moving party to 'just initiate' the meet and confer process before sending its portion of a joint stipulation to the opposing party. The moving party must ***complete*** such process, and only after the process is not successful may the moving party forward its portion of the joint stipulation under Local Rule 37-2. *Zissa v. Cty. of Los Angeles*, at *2 (C.D. Cal. Jan. 19, 2021) (emphasis added).

After sending a compliant letter the parties must then participate in a specific meet and confer conference. "The requirement to meet in person is not an empty exercise, but rather is intended to facilitate the efforts of the parties to fully discuss their differences and to maximize the possibility of resolving any disputes without the need for Court intervention." *Vega v. Ocwen Fin. Corp.*, 2014 WL 12614436, at *1 (C.D. Cal. Nov. 3, 2014); *see also Reinsdorf v. Skechers U.S.A., Inc.*, 2012 WL 12878325, at *1 (C.D. Cal. Jan. 30, 2012). Good faith under Local Rule 37-1 "requires more than abandoning the meet and confer effort after a single letter"; it requires

follow up. *See Ellsworth v. Schneider Nat'l Carriers, Inc.*, 2021 WL 4620913, at *2 (C.D. Cal. June 30, 2021). Even if the parties "find it tedious to have to discuss the nature of the parties' disputes as to each discovery request . . . it is the parties who are in the best position to resolve their differences promptly and with less expense." *See Castillo v. Bank of Am. N.A.*, 2018 WL 6074580, at *2 (C.D. Cal. Sept. 28, 2018).

Defendants here satisfied none of Local Rule 37-1 or 37-2's requirements. Karczewski Decl., ¶¶ 4-11. For this reason alone, the Court should deny Defendants' motion in its entirety. "Any reasonable litigant in this district would think twice before filing a 223-page discovery motion without conducting a thorough meet and confer involving at least one verbal exchange about each discovery request at issue." *See Rahmatullah v. Charter Commc'ns, LLC*, 2021 WL 1593242, at *2-3 (C.D. Cal. Mar. 25, 2021) (court admonishing a party's decision to abandon meet-and-confer negotiations prematurely and burden the court's time and resources with a 223-page joint stipulation); *see also Mulligan v. Nichols*, 2013 WL 12124004, at *2 (C.D. Cal. July 12, 2013) (warning against "inadequate meet and confer efforts which result in unnecessary 100-page discovery motions"). Here, Defendants totally failed to meet and confer about a single item, discovery request or topic before sending Plaintiff their 112-page "joint" statement. To be clear, Plaintiff contributed no language to either that version of the "joint" statement or the 128-page joint statement eventually filed with the Court. Nothing about Defendants' process in bringing this motion was reasonable. As such, the Court should deny Defendants' motion and consider ordering monetary sanctions against Defendants and its counsel pursuant to Local Rule 37-4.

    **b.** <u>*Defendants Fail to Satisfy their "Heavy Burden" for a Stay on each of the Three Prongs of the "Landis" Analysis*</u>.

    **i. Balancing the Competing Harms Resulting from a Stay of Discovery Heavily Favors Denying Defendants' Motion.**

The first two factors of the *Landis* test weigh the competing harms incurred by

the parties if a stay were granted, but "the costs and expenses of litigation do not generally rise to the hardship required to support a stay." *Id*. In addressing the third factor "[c]ourts should 'take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be an immediate and clear possibility that it will be granted." *Id*. at *3, quoting *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 286 (S.D. Cal. 2000).

Defendants' 128-page "joint" statement is devoid of *any* discussion of the comparative harms experienced by the parties if the Court grants its requested stay. Indeed, the *only* time Defendants come close to discussing comparative harm is with this single conclusory sentence: "Plaintiff will not be prejudiced by this temporary stay as Defendants' MSJ will be on file with the Court with a fixed hearing date by the time this Joint Stipulation is filed can be expediently heard." "Joint" Statement, 33:12-15. That is the sum total of Defendants' effort to meet their "heavy burden." *Blankenship*, 519 F.2d at 429. Fortunately, conclusory statements like this single sentence do not suffice. *Gray*, 133 F.R.D. at 40.[4]

Contrary to Defendants' bald conclusion Plaintiff will suffer significant prejudice if prohibited from conducting the depositions. Karczewski Decl., ¶¶ 12-13. Plaintiff needs the depositions to further discover several key facts Plaintiff will use to oppose Defendants' Motion for Summary Judgment. *Id*. Plaintiff needs the depositions to ask D2 about all CBAs, amendments, appendices and memorandums that it uses to support its summary judgment motion, and when and whether it accepted amendments to the CBA after signing the International Agreement in 2017. *Id*. This inquiry has been a moving target as the documents that Defendants contend support their motion for summary judgment have continued to evolve since

---

[4] Judge Anderson's scheduling order requests that the parties meet and confer regarding the briefing schedule on a motion for summary judgment. Defendants did not meet and confer about the briefing schedule on their motion for summary judgement. Instead, they filed that motion simultaneously with their motion for protective order forcing Plaintiff's counsel to oppose both motions simultaneously.

September. Plaintiff also requires D2's deposition to explore the joint employer relationship over Plaintiff by Defendants F.D. Thomas, Inc. and ASRC Industrial Services, LLC, where and when Plaintiff performed work for D2 and how Plaintiff was paid for that work. Plaintiff needs the deposition of Terra Wells because Ms. Wells is the sole person to opine on the applicability and scope of the CBA and its amendments, appendices, and clauses. Plaintiff needs to depose Ms. Wells on what documents she searched for and used to come to the conclusions sh reached in her many declarations filed with the Court to date.

### ii. Defendants' Have No Plausible Argument why their Motion for Summary Judgment should be Granted.

The most egregious problem with Defendants' request for a protective order is that they have never articulated how the PAGA exemption could plausibly apply in this case. Defendants' entire Motion for Summary Judgment hinges on Defendants' ability to demonstrate that D2 manifested its assent to be bound a PAGA exemption via a memorandum of understanding that did not come into existence until 2019. The inescapable problem for Defendants is that they can only produce an agreement from D2 dated in 2017–***when the PAGA exemption did not exist, nor did the law creating it, and thus could not have possibly been assented to***. Defendants apparently intend to solve this fatal problem by submitting the declarations of two non-party lay persons: Stephen Araiza and Anthony Graziano. Mr. Araiza is an administrator who works for the regional union. Araiza Decl., ¶ 1. His contribution to Judge Anderson's decision on the Motion for Summary Judgment is to opine that he "considers" the PAGA exemption as part of the CBA. Araiza Decl., ¶ 8. Mr. Graziano is an assistant who works for the broader North American union. Graziano Decl., ¶ 1. His contribution is to testify that it is his "understanding" that in reality the PAGA exemption applies anyway. Graziano Decl., ¶ 7. This is no exaggeration. This is the extent of the evidence provided to date upon which Defendants will ask Judge Anderson to dismiss this entire action; just as long as Plaintiff is prohibited

from conducting any discovery of his own.

      **c.** *Defendants Fail to Satisfy the Two-Prong Test for Issuing a Protective Order*.

The Court may elect to apply "a two-pronged analysis in deciding whether to grant a protective order staying discovery before other pending motions can be heard. First, a pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed." *Lowery v. F.A.A.*, 1994 WL 912632, at *3 (E.D. Cal. Apr. 11, 1994). "Second, the court must determine whether the pending dispositive motion can be decided absent additional discovery. If the court answers these two questions in the affirmative, a protective order may ensue. However, if either prong of this test is negative, discovery proceeds. Denying a protective order is particularly appropriate if a stay of discovery could preclude either party from fully preparing for the pending dispositive motion." *Id.*

Neither prong can be answered in the affirmative. With respect to the first prong, Defendants provide no evidence whatsoever that D2–let alone the other two Defendants–ever assented to the PAGA exemption agreement that post-dates D2's assent to the CBA in 2017. Assembly Bill 1654 did not exist in 2017 and the PAGA exemption was not part of California law when D2 signed the "international agreement" in 2019. As such, the PAGA exemption cannot work to bar Plaintiff's PAGA claim vis-à-vis Defendant D2. Moreover, Defendants offer no evidence whatsoever showing how summary judgment could be granted in favor of Defendants F.D. Thomas, Inc. or ASRC Industrial Services, LLC. There is no scenario where Defendants' Motion for Summary Judgment can dispose of the entire action. The same answer results from considering the second prong. Plaintiff must be permitted to depose both Ms. Wells and D2 regarding how and why they believe the PAGA exemption, which post-dates D2's execution of the 2017 international agreement, could bind D2 and Plaintiff. Plaintiff needs the depositions to further discover what Ms. Wells considered when she executed her declarations testifying

about the CBA and terms included therein. Plaintiff needs the depositions to ask D2 about all CBAs, amendments, appendices and memorandums that it will use to support its summary judgment motion. This inquiry has been a moving target as the documents that Defendants contend support their motion for summary judgment have continued to evolve since September.

Because Defendants cannot answer both (or even one) prongs in the affirmative, discovery must proceed. *Lowery*, 1994 WL 912632, at *3.

### d. *Defendants' Distortion of Fed. R. Civ. P. Rule 26(b)(2)(C)(i) Lacks any Legal or Rational Support and must be Rejected*.

Defendants maintain that Plaintiff must–for some undefined reason–gather evidence from sources other than deposition. They cite Fed. R. Civ. P. 26(b)(2)(C)(i) for the proposition that, because they believe it be so, Plaintiff must follow a discovery plan Defendants deem acceptable. Defendants also argue that the depositions could be avoided by utilizing other forms of discovery. This contention fails for several reasons. First, Plaintiff offered to accept documents in lieu of deposition testimony on eight different topics but Defendants failed to even consider that offer. Second, some deposition testimony is required in order to fully develop the factual record surrounding the CBA, its amendments, and when and what D2 agreed to be bound by with respect to the CBA. For example, did Terra Wells consider the "international agreement" in filing her declarations? Did she consider the 2019 implementation of Assembly Bill 1654 and how that would or would not amend the CBA unless expressly agreed to by D2?

Finally, no case allows for such a constriction of a party's right to conduct discovery under the federal rules. Indeed, the only case that Defendants cite to support their argument is *Dugan v. Quanstrom*, 2003 WL 22956124, at *4 (N.D. Ill. Dec. 11, 2003). *Dugan* does not stand for Defendant's proposition that a litigant must utilize other discovery mechanisms before conducting depositions. Rather, courts routinely find "no prohibition on a party seeking deposition testimony in lieu

of or in conjunction with [] interrogatories." *Colony Ins. Co. v. Sanchez*, 2019 WL 3241160, at *3 (D. Nev. July 18, 2019), citing *Caesars Entertainment* ; *Security Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 29, 34 (D. Conn. 2003). "Courts are generally unwilling to interfere with a party's decision to conduct a Rule 30(b)(6) deposition, even when other, more efficient, discovery options may be available." *Colony Ins.*, at *3, citing *Autoridad de Carreteras Y Transportation v. Transcore Atl., Inc.*, 319 F.R.D. 422, 438 (D.P.R. 2016). The general rule is "a litigant must appear for deposition notwithstanding the availability of written discovery on the same topics." *Colony Ins.*, at *3 citing *Bank of Am., N.A. v. Auburn & Bradford at Providence Homeowners' Ass'n*, 2016 U.S. Dist. LEXIS 104827, at *6-7 (D. Nev. Aug. 1, 2016).

## V. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court deny Defendants' motion in its entirety and consider issuing monetary sanctions against Defendants and their counsel.

Dated: November 15, 2021         LAWYERS FOR JUSTICE

                                 By: /s/ Jacob Karczewski
                                     Jacob Karczewski
                                     Charles Sweeny
                                     Attorneys for Plaintiff
                                     RAFAEL MELENA, JR.