1  Edwin Aiwazian (Cal. State Bar No. 232943)
   edwin@calljustice.com
2  Jacob Karczewski (Cal. State Bar No. 268295)
   jacob@calljustice.com
3  Charles T. Sweeny (Cal. State Bar No. 325167)
   charles@calljustice.com
4  **LAWYERS *for* JUSTICE, PC**
   410 West Arden Avenue, Suite 203
5  Glendale, California 91203
   Telephone: (818) 265-1020
6  Facsimile: (818) 265-1021

7  *Attorneys for* Plaintiff

8

9                    **UNITED STATES DISTRICT COURT**

10                   **CENTRAL DISTRICT OF CALIFORNIA**

11

   RAFAEL MELENA, JR., individually,      Case No. 2:21-cv-06769 PA(Ex)
12 and on behalf of other aggrieved
   employees pursuant to the California    (Removed from:
13 Private Attorneys General Act,          Los Angeles County Superior Court,
                                           Case No. 21CMCV00146)
14              Plaintiff,
         v.                                **PLAINTIFF'S OPPOSITION TO**
15                                         **DEFENDANTS' MOTION FOR**
   ASRC INDUSTRIAL SERVICES, LLC,          **SUMMARY JUDGMENT OR, IN**
16 an unknown business entity; D2          **THE ALTERNATIVE, SUMMARY**
   INDUSTRIAL SERVICES, an unknown         **ADJUDICATION**
17 business entity; F.D. THOMAS, INC., an
   unknown business entity; and DOES 1     *[Filed concurrently with Statement of*
18 through 100, inclusive,                 *Genuine Issues; Objections to*
                                           *Defendant's Evidence; Declaration of*
19              Defendants.                *Jacob Karczewski; and [Proposed]*
                                           *Order]*
20
                                           District Judge:  Hon. Percy Anderson
21                                         Magistrate:      Hon. Charles F. Eick
                                           Hearing Date:    December 20, 2021
22                                         Hearing Time:    1:30 p.m.
                                           Department:      9A
23                                         Judge:           Hon. Percy Anderson
24                                         Action Filed:    June 10, 2021
                                           Motion Cutoff    May 9, 2022
25                                         Disc. Cutoff:    May 2, 2022
                                           Trial Date:      July 12, 2022
26

27

28

# TABLE OF CONTENTS

I.  INTRODUCTION................................................................................................ 1

II. LEGAL ARGUMENT ....................................................................................... 2

    A.  Motion for Summary Judgment Standards ............................................. 2

    B.  Legal Contract Law standards ................................................................. 3

    C.  The Motion Must Be Denied as to Defendants AIS And FDT Because Neither are Party to the CBA ................................................................ 4

    D.  The CBA Does Not Apply D2 Because it Applies Only to Those "Who Have Individually Signed" It ..................................................................... 5

    E.  Appendix O, the PAGA MOU, Was Never Properly Incorporated Into The CBA…………………………………………………………………………………6

        1.  *The PAGA MOU Is Not Incorporated Because It is Covered Under the Limited Exceptions to the CBA Anti-Modifications Provisions*............................ 6

        2.  *The PAGA MOU Is Not Incorporated Because It Lacks Consideration.* 7

    F.  Even if Appendix "O" Was Incorporated Into The CBA, Section 2699.6 Does Not Apply Here for Myriad Reasons ..................................................... 7

        1.  *As a Practical Matter, Labor Code 2699.6 was not a Law When D2 Signed the International Agreement such that it was not an "Established" Provision to which D2 could have Agreed.* ......................................................... 8

        2.  *As Matter of Contract Interpretation, the PAGA MOU as not "Established" when the International Agreement was Executed.* ...................... 9

        3.  *Defendants Provide No Evidence–Direct or Indirect–to Support their Interpretation that the CBA's PAGA MOU was Incorporated by the International Agreement*.................................................................... 10

        i.  *Lack of Direct Evidence of PAGA MOU's Incorporation.* ...................... 10

        ii.  *Lack of Evidence Showing the PAGA MOU is Impliedly Incorporated.* .. 11

        4.  *The PAGA MOU does not Fall within Article I of the International Agreement and such it does not Apply to D2 or Plaintiff.*................................. 12

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

i

5.    *Terra Wells' Declarations Misconstrue What, In Fact, is a "True and Correct Copy" of the CBA that was "Entered Into" on July 1, 2016.* ............... 12

G.    **Plaintiff's PAGA Claims are Not Preempted by the LMRA** .......................... 15

1.    *Plaintiff's Labor Code Claims Are Not Preempted Because Defendants Are Not Parties To Nor Bound By The CBA.* ................................................. 17

2.    *Assuming that D2 Is Bound by the CBA, Plaintiff's PAGA Claims are Not Preempted Under LMRA.* ................................................................. 17

i.    *Plaintiff's Meal Break Claims Are Not Preempted.* .................................. 17

ii.    *Plaintiff's Rest Break Claims Are Not Preempted* .................................. 18

iii.    *Plaintiff's Overtime Claims Are Not Preempted* .................................. 18

iv.    *Plaintiff's Expense Reimbursement Claims Are Not Preempted* ............. 19

v.    *Plaintiff's Wage Statement and Waiting Time Claims Are Not Preempted* ...........................................................................................19

H.    **Defendants Violated this Court's Specific, Straightforward Orders by Noticing their Motion for 45 days after the Date of Service.** ......................... 19

III.    **CONCLUSION** ............................................................................. 21

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

# <u>TABLE OF AUTHORITIES</u>

**State Cases**

*AIU Ins. Co. v. Sup. Ct.*
  51 Cal. 3d 807 (Cal. App. 1990) .................................................................. 3

*Ajax Magnolia One Corp. v. S. Cal. Edison Co.*
  167 Cal.App.2d 743 (Cal. App. 1959) ......................................................... 4

*Baker v. Aubry*
  216 Cal. App. 3d 1259 (Cal. App. 1989) .................................................... 4

*Chan v. Drexel Burnham Lambert, Inc.*
  178 Cal. App. 3d 632 (1986) ...................................................................... 4

*Crawford v. Weather Shield Mfg., Inc.*
  44 Cal.4th 541 (Cal. 2008) .......................................................................... 9

*Fairline Estates, Inc. v. Carrico Const. Co.*
  228 Cal. App. 2d 65 (Cal. App. 1964) ........................................................ 7

*Kim v. Reins Int'l California, Inc.*
  459 P.3d 1123 (Cal. 2020) .......................................................................... 21

*ML Direct, Inc. v. TIG Specialty Ins. Co.*
  79 Cal. App. 4th 137, 142 (Cal. App. 2000) ............................................... 11

*Vons Companies, Inc. v. United States Fire Insurance Co.*
  78 Cal. App. 4th 52 (Cal. App. 2000) ........................................................ 4

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986) .................................................................................... 3

*Balcorta v. Twentieth Century–Fox Film Corp.*
  208 F.3d 1102 (9th Cir. 2000) .................................................................... 16

*Burnside v. Kiewit Pac. Corp.*
  491 F.3d 1053 (9th. Cir. 2007) ............................................................. 16, 17

*Caterpillar, Inc. v. Williams*
  482 U.S. 386 (1987) .............................................................................. 16, 18

*Cramer v. Consol. Freightways, Inc.*
  255 F.3d 683 (9th Cir. 2001) ...................................................................... 16

*Dazadi, Inc. v. Sport Squad, LLC*
  2017 WL 5635029 (C.D. Cal., May 25, 2017) ........................................... 9

*In re Bennet*
  298 F.3d 1059 (9th Cir. 2002) .................................................................... 3

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

iii

*International Brotherhood of Teamsters v. NASA Services, Inc.*
  957 F.3d 1038 (9th Cir. 2020).................................................................3, 10

*Kobold v. Good Samaritan Reg'l Med. Ctr*
  832 F.3d 1024 (9th Cir. 2016).......................................................................16

*Livadas v. Bradshaw*
  512 U.S. 107 (1994)...............................................................................16, 17

*Matson v. United Parcel Service, Inc.*
  840 F.3d 1126 (9th Cir. 2016).......................................................................19

*Revitch v. DIRECTV, LLC*
  977 F.3d 713 (9th Cir. 2020)......................................................................9, 10

*Sony Computer Entm't Am., Inc. v. Am. Home Assur. Co.*
  532 F.3d 1007 (9th Cir. 2008).........................................................................3

*U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*
  281 F.3d 929 (9th Cir. 2002).........................................................................3

**State Statutes**

Cal. Civ. Code § 1605................................................................................7

Cal. Civ. Code § 1636...........................................................................3, 10

Cal. Civ. Code § 1639................................................................................3

Cal. Civ. Code § 1641................................................................................3

Cal. Civ. Code § 1644................................................................................9

Labor Code § 2699.6...........................................................................1, 7, 8

**Federal Statutes**

Fed. R. Civ. P. 56(a)..............................................................................2

LMRA § 301....................................................................................2, 15

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendants ASRC Industrial Services, LLC ("AIS"), D2 Industrial Services, Inc. ("D2"), and F.D. Thomas, Inc. ("FDT"), collectively referred to herein as "Defendants" Motion for Summary Judgment must be denied because Defendants fail to meet their initial burden under Rule 56(a). They do not and cannot show an absence of genuine issues of material fact because they provide no evidence showing D2 agreed to the Private Attorney General Act exemption (Labor Code § 2699.6, hereinafter the PAGA Exemption). Two agreements–and especially the time at which they were made–control this issue. The first is a collective bargaining agreement ("CBA") which no Defendant ever signed. Dkt. 21-5. It was executed in 2016. The second is an "International Agreement," which only Defendant D2 signed in October 2017. Dkt. 21-7. The International Agreement purports to show D2 agreeing to be bound by some but not all of the then-effective, then-established CBA. Both agreements predate the PAGA Exemption becoming a law in this state by well over a year. In January of 2019, the PAGA Exemption was signed into law, and thereafter *only* the parties who originally signed the CBA signed an amendment to it, agreeing to be bound by the new PAGA Exemption law. Dkt. 21-8, at 10-11, hereinafter referred to as the "PAGA MOU."

No Defendant has ever signed the PAGA MOU, not even D2. In fact, D2 does not even provide a declaration in support of Defendants' motion. Instead, Defendants provide declarations from two persons–Stephen Araiza and Anthony Graziano–who worked for the union (at the regional and national levels) and who attempt to tell the Court how it should interpret contract formation and dispose of this case. Neither declaration is admissible and Plaintiff submits several objections to each. At bottom, Defendants' argument for the PAGA Exemption applying is that the Court should infer that the parties really manifested their intent to be bound by a law that did not exist the last time they put pen to paper on any

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

document.  Their argument easily fails for a variety of reasons.

First, the CBA's terms explicitly limit its application to only those "who have individually signed it."  That means exactly what it says–if each Defendant did not sign the CBA, it does not apply to them.  Second, if the parties to the CBA wished to amend it there were only certain subjects they could amend, and strict procedures to follow to effectuate any amendments.  A PAGA Exemption was not a subject permissible to amend, and the procedures were certainly not followed.  Third, harkening back to hornbook contract law–there was no requisite consideration at all provided in exchange for accepting the PAGA Exemption.  Finally, the PAGA Exemption is not one of the very few provisions of the CBA that the International Agreement agreed to abide by in Article I.  The International Agreement and its signatories only ever agreed to the CBA's provisions related to contractual wages, fringe benefits, hours and other working conditions," nothing more.  For these reasons, Defendants' main argument that relies in total on the PAGA MOU must fail.

Defendants alternatively argue that each of Plaintiff's underlying Labor Code claims are preempted by section 301 of the Labor Management Relations Act ("LMRA").  Despite the parties never meeting and conferring over this argument prior to Defendants moving for summary judgment, each of these arguments easily fails for reasons discussed below.[1]

## II.  LEGAL ARGUMENT

### A. <u>MOTION FOR SUMMARY JUDGMENT STANDARDS</u>

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby,*

---

[1] Defendants Motion for Summary Judgment violates both Local Rule 7-3 and section six of the Court's Standing Order at pp. 4-5.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

*Inc.*, 477 U.S. 242, 256 (1986). The court must view the inferences drawn from the facts in the light most favorable to the nonmoving party. *Id.* at 255 *supra*, 477 U.S. at 322. Fed. R. Civ. P. 56(d) states that when the nonmovant shows by declaration that it cannot present facts essential to oppose a motion for summary judgment that the Court may either defer considering the motion, deny the motion, or allow the nonmoving party time to obtain discovery to oppose the motion.[2]

## B. <u>LEGAL CONTRACT LAW STANDARDS</u>

"The courts' superseding objective when interpreting a contract is to 'give effect to the mutual intention of the parties *as it existed at the time of contracting*.'" *International Brotherhood of Teamsters v. NASA Services, Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) (quoting Cal. Civ. Code § 1636) (emphasis added). "When a contract is reduced to writing, this intent 'is to be ascertained from the writing alone, if possible.'" *U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc*., 281 F.3d 929, 934 (9th Cir. 2002) (citing Cal. Civ. Code § 1639). "If contractual language is clear and explicit, it governs." *In re Bennet*, 298 F.3d 1059, 1064 (9th Cir. 2002); *AIU Ins. Co. v. Sup. Ct.*, 51 Cal. 3d 807, 822 (Cal. App. 1990); *Sony Computer Entm't Am., Inc. v. Am. Home Assur. Co*, 532 F.3d 1007, 2012 (9th Cir. 2008).

"'The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.'" *International Brotherhood of Teamsters, supra*, 957 F.3d at 1042 (quoting Cal. Civ. Code § 1641). As the California Court of Appeal stated decades ago,

> It is a primary rule of interpretation that contracts must be construed as a whole[,] that is, from their four corners, and the intention of the parties is to be collected from the entire instrument and not detached portions thereof, it being necessary to consider all of the parts to determine the meaning of any particular part as well as of the whole. Individual clauses and particular words must be considered in

---

[2] Plaintiff hereby requests that the Court invoke Rule 56(d) and permit Plaintiff time to conduct additional discovery to oppose Defendants' Motion for Summary Judgment.  Declaration of Jacob Karczewski (Karczewski Decl.), ¶¶ 5-22), filed concurrently herewith.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

connection with the rest of the agreement, and all of the writing and every word of it will, if possible, be given effect."

*Ajax Magnolia One Corp. v. S. Cal. Edison Co.*, 167 Cal.App.2d 743, 748 (Cal. App. 1959).

The Court's "function is to determine what, in terms and substance, is contained in the contract, not to insert what has been omitted." *Vons Companies, Inc. v. United States Fire Insurance Co*. 78 Cal. App. 4th 52, 59-60 (Cal. App. 2000). The Court "do[es] not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there." *Id.* "Under California law, parties may validly incorporate by reference into their contract the terms of another document." *Baker v. Aubry*, 216 Cal. App. 3d 1259, 1264 (Cal. App. 1989). However, the reference to the incorporated document must be clear and unequivocal and the terms of the incorporated document must be known or easily available to the contracting parties. *Id.; Chan v. Drexel Burnham Lambert, Inc*., 178 Cal. App. 3d 632, 641 (1986).

## C. <u>THE MOTION MUST BE DENIED AS TO DEFENDANTS AIS AND FDT BECAUSE NEITHER ARE PARTY TO THE CBA</u>

Defendants' motion is brought not only on D2's behalf but also by Defendants AIS and FDT.  None of Defendants' Uncontroverted Facts establish that either AIS or FDT were party to the CBA or the International Agreement. Dkt. 21-2.  Nor do they purport to establish that they are intended third-party beneficiaries to either agreement.  Id.  In fact, the only reference to either entity is in fact number two, which cites to a single paragraph in paragraph four of Terra Wells' declaration. Id. at p. 2.  Ms. Wells' statement in her declaration summarily states "Plaintiff was never employed by AIS or FDT."  Dkt. 21-5 at p. 2.  She provides no foundation for how she reached this conclusion or what if any documents she reviewed.  She previously testified that AIS wholly controls both D2 and FDT.  Dkt. 22-2 at p. 2.  Her declarations fail to establish whether and to

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

what extent AIS or FDT had the right to control the manner and means of Plaintiff's work, or whether either suffered or permitted such work.  Martinez v. Combs, 49 Cal.4th 35, 68-69 (2010).  As such, Defendants AIS and FDT wholly failed to meet their initial burden under Rule 56.

## D. THE CBA DOES NOT APPLY D2 BECAUSE IT APPLIES ONLY TO THOSE "WHO HAVE INDIVIDUALLY SIGNED" IT

Defendants supply no evidence for their conclusion that the CBA is binding on D2.  According to the CBA itself, D2 is not binding on any members of the Association (United General Contractors, Inc.)[3] **unless those members have also individually signed the CBA**. Section 102.2 of the CBA provides:

> This Agreement is made for and on behalf of and shall be binding upon all eligible persons, firms or corporations who at the time of execution of this Agreement are, or during the term hereof become eligible members of the Association **and who have individually signed this Agreement**.

Dkt. 21-7, p. 12 emphasis added.  There is no evidence that D2 signed the CBA.

Indeed, the CBA further clarifies under Section 202 that UGC is recognized as the sole and exclusive bargaining representative "for its respective eligible members, present and future, who **are or who become bound by this agreement**…"  Because Defendants cannot provide evidence that D2 signed the CBA, Defendants also cannot maintain that UGC was authorized to negotiate on D2's behalf with respect to the CBA.  This means that Defendants loose contention that "[t]he terms and conditions of Plaintiff's employment as a Scaffolder for D2 from August 2020 through October 2020 were *governed by the CBA between United General Contractors, Inc. and the Union*," *cannot be* a consequence of UGC's agreement to be bound by the CBA.  Under the CBA's express terms, D2 never agreed to be bound. ECF 21-1, at 17:14-15; ECF 21-2, p. 20:13-15.

---

[3] "The term Association, as used herein, shall refer to the United General Contractors, Inc. previously named and signatory to this Agreement negotiating on behalf of its eligible members."  ECF 21-7, p. 8, Art. I, Sec. 101.2.

**E. <u>APPENDIX O, THE PAGA MOU, WAS NEVER PROPERLY INCORPORATED INTO THE CBA</u>**

The PAGA MOU that Defendants now contend is a part of the CBA was never properly incorporated for two reasons.  First, the CBA contains an anti-modification clause that only provides for modifications in limited circumstances for limited purposes, none of which apply to the PAGA MOU.  Second, the PAGA MOU substantially modified the CBA without any supporting consideration.

**1.  The PAGA MOU Is Not Incorporated Because It is Covered Under the Limited Exceptions to the CBA Anti-Modifications Provisions**

The July 1, 2016 CBA expressly identifies the ***only*** appendices incorporated, which "shall be a part of this Agreement as though fully set forth herein," as Appendices A through L, and Appendix SD.   Dkt. 21-7, at Paragraph 2901 ("ARTICLE XXIX APPENDICES").  The CBA contains a strict anti-modification clause precluding changes or modifications "except as otherwise provided in the Article covering existing and other agreements." Dkt. 21-7, at Paragraph 102.4 The anti-modification clause states in full:

> This Agreement is separate and distinct from and independent of all other Agreements entered into between the Union and other Contractor organizations irrespective of any similarity between this Agreement and any such other Agreements, and **no acts or things done by the parties to such Agreements** or notices given pursuant to the provisions thereof, **shall change or modify this Agreement or in any manner affect the contractual relationships of the parties herein**, **except as otherwise provided in the Article covering existing and other Agreements**.

Dkt. 21-7, at Paragraph 102.4 (hyphens omitted, emphasis added).

None of the provisions in the Article Covering "Existing and Other Agreements," Article XII, permit the PAGA MOU to be incorporated as a subsequent modification to the CBA.  Paragraph 1201 and 1201.1 only addresses subsequent modifications regarding "special conditions for work" in certain "Area

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

Agreements." Dkt. 21-7, 1201. Paragraph 1202 only applies to "other Agreements pertaining to the rental and use of construction equipment." Dkt. 21-7, 1202. Paragraph 1204 addresses "project agreements with MBE's and WBE's when required by bid specifications or government regulations."

In contrast to these specific and enumerated provisions–which are the ***only*** exceptions to the anti-modification clause under Paragraph 102.4–the January 4, 2019 PAGA MOU's stated purpose is to "avail" the parties (SWRCC and UGC) "of the exemption that the Private Attorneys Generals Act, in particular Labor Code § 2699.6, [and] extend [it] to collectively-bargained contractors in the construction industry." Dkt 21-8, at p. 10-11. Thus the PAGA MOU amounts to a substantial modification of the CBA and is expressly forbid under the CBA's own terms.

**2. The PAGA MOU Is Not Incorporated Because It Lacks Consideration.**

The PAGA MOU is also not incorporated into the CBA signed because it is a substantial modification that lacks adequate consideration. "Modification of a written contract is not binding unless supported by consideration." *Fairline Estates, Inc. v. Carrico Const. Co.*, 228 Cal. App. 2d 65, 71 (Cal. App. 1964). Consideration requires that one party induce another to a promise by conferring a benefit to which that other party was not lawfully entitled. Cal. Civ. Code § 1605. Here, because neither party gained or sacrificed anything compared to the other, it is not enough that the SWRCC and UGC wished to modify the CBA on January 4, 2019 "for the purpose of availing themselves of the exemption" under section 2699.6. Dkt 21-8, at p. 10-11. As a result, there was insufficient consideration for the CBA to be modified by the addition of the PAGA MOU.

**F. EVEN if APPENDIX "O" WAS INCORPORATED INTO THE CBA, Section 2699.6 Does Not Apply Here for myriad reasons**

Assuming, arguendo, that the PAGA MOU was incorporated into the CBA

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

7

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

in 2019, the PAGA exemption created by Labor Code § 2699.6 does not apply here.  There are several reasons for this.

> **1. As a Practical Matter, Labor Code 2699.6 was not a Law When D2 Signed the International Agreement such that it was not an "Established" Provision to which D2 could have Agreed.**

The original CBA, entered into on or about July 1, 2016, <u>predated by more than a year the passage of the PAGA exemption into law</u>. The International Agreement was executed October 19, 2017, and does not expressly or impliedly evince D2 agreeing to be bound by the entire CBA–as a whole–as it was then-constituted in 2017, much less the subsequently attached PAGA MOU.  Rather, under Article I, D2 clarified the "recognition and scope" of its agreement as follows, in full:

> The Employer [D2] agrees to recognize the jurisdictional claims of the International Union and to comply with the contractual wages, fringe benefits, hours and other working conditions ***established between*** the International Union affiliates and the employers or recognized employer agencies in the localities in which the employer does any work within the jurisdiction of the International Union.

International Agreement, Dkt. 21-9, p. 7, at Art. I. (emphasis added).  This manifests, at most, D2's agreement to (1) recognize jurisdictional claims of the International Union, and (2) comply with the contractual wages, fringe benefits, hours, and other working conditions, that had *by then been established*.  It does not manifest an assent to be bound by either by the CBA writ large or a subsequently-drafted MOU that refers to a law that had not been enacted at the time of the International Agreement's signing.

Under basic contract interpretation principles (*see* section II(B), *supra*), that the limited PAGA exemption under Labor Code § 2699.6, did not become law until January 1, 2019, over a year *after* D2 executed the International Agreement. Because the PAGA exemption did not exist when D2 executed the International Agreement, it could not have been "established" as part of the CBA.

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

### 2. As Matter of Contract Interpretation, the PAGA MOU as not "Established" when the International Agreement was Executed.

To the extent that the International Agreement evinces D2's assent to the International Union's jurisdictional claims or to comply with contractual wages, fringe benefits, hours and working conditions, that assent is ***expressly limited to*** those that had already been "***established***" as of the October 19, 2017 execution date.  International Agreement, Dkt. 21-9, p. 7, at Art. I. (emphasis added). "Unless the parties have indicated a special meaning, the contract's words are to be understood in their ordinary and popular sense." *Crawford v. Weather Shield Mfg., Inc.*, 44 Cal.4th 541, 552 (Cal. 2008); Cal. Civ. Code § 1644.

"Established" is the past-tense of the verb "establish."  In contrast "will establish" or "may establish" are examples of future-tense uses of the verb "establish."  "Established," in this context thus can only reasonably be understood in its ordinary, past-tense sense as referring to events or agreements that occurred prior to and up to October 19, 2017, but not events that could or would occur later. *See, also., Dazadi, Inc. v. Sport Squad, LLC*, 2017 WL 5635029, at *4 (C.D. Cal., May 25, 2017) (finding that a contract's exclusive utilization of "the past tense" was an inclusion that "most reasonably referred" to events occurring in the past).

In *Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020), the Ninth Circuit held that the absence of future-tense description of "affiliates" in a contract barred a later-joining affiliate from enforcing the contract's terms.  In *Revitch*, a party who contracted with a cell phone services provider could not reasonably have expected that he would be forced to arbitrate an unrelated dispute with a television provider that would not become affiliated with the cell phone services provider until years later.  *Revitch*, 977 F.3d, at 717-718. The *Revitch* Court's reasoning is instructive:

> Had the wireless services agreement stated that "AT&T" refers to "any affiliates, both present and future," we might arrive at a different conclusion.  However, **absent this or similar forward-looking**

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

**language**, we are convinced that the agreement **does not cover entities that became affiliated with AT&T Mobility years after the contract was signed** in an unrelated corporate acquisition. *See Unova, Inc. v. Acer Inc*., 363 F.3d 1278, 1282 (Fed. Cir. 2004) (interpreting California law and holding that **a release from liability provision "written in the present tense ... most naturally does not refer to [a party's] future parents**"); *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 130 (2d Cir. 2001) ("The Release's reference to 'affiliates' ... [is] stated in the present tense. Nothing ... indicates the inclusion of future rather than present members.").

*Revitch*, 977 F.3d, at 718.

These basic contract law principles instruct are crucial here. If the International Agreement stated D2 agreed to "comply with the contractual wages, fringe benefits, hours and other working conditions [that "*will*" or even *"may" be established* in the future] between the International Union affiliates and the employers or recognized employer agencies," the Court might be able to ascertain a broader, forward-looking intent by D2. That language could be interpreted as manifesting D2's intent to be bound by future-but-not-yet-existing terms. The International Agreement does not so state.

### 3. Defendants Provide No Evidence–Direct or Indirect–to Support their Interpretation that the CBA's PAGA MOU was Incorporated by the International Agreement.

*i.      Lack of Direct Evidence of PAGA MOU's Incorporation.*

At the time of contracting in 2017, is impossible that either party's intention was to agree to a PAGA waiver under Labor Code § 2699.6. Defendants broadly contend–without *any* contractual language cited in support–that D2's intent to agree to the PAGA MOU may be ascertained from the International Agreement itself. Again, when the International Agreement was signed, the PAGA exemption did not exist as a law in this state. "The courts' superseding objective when interpreting a contract is to 'give effect to the mutual intention of the parties *as it existed at the time of contracting*.'" *International Brotherhood of Teamsters, supra*, 957 F.3d at 1042.

Ignoring this fatal fact, Defendants instead cite the following

10

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

1  "uncontroverted facts" to support their claim that the PAGA MOU is part of the

2  International Agreement:  35-36, 39, and 41-43.  Each of these "uncontroverted

3  facts" relies solely upon lay opinions of Anthony Graziano at paragraphs 4-7, and

4  Stephen Araiza at paragraphs 7-8.  Nothing in either individual's declaration

5  establishes that the PAGA MOU was in fact incorporated into the International

6  Agreement as executed by D2.  *See*, Plaintiff's Statement of Genuine Issues and

7  Plaintiff's Objections to Defendants' Evidence, both filed concurrently herewith.

8          ii.     *Lack of Evidence Showing the PAGA MOU is Impliedly Incorporated.*

9          There is no evidence from which to infer that D2 implicitly accepted the

10  PAGA MOU.  First and most fatal, D2 submits no declaration of its own to testify

11  to its intent or understanding of the International Agreement.  Even more, after

12  executing the CBA and the International Agreement, contracting parties

13  demonstrated that they knew how to assent to terms of the subsequent

14  amendments.  This much is evidenced by the fact that the SWRCC and UGC did

15  indeed express their assent to the PAGA MOU on January 4, 2019.  *See* Araiza

16  Decl. p. 2 of 2, Dkt. 21-8, at p. 11.  No similar agreement exists as to D2.  If D2

17  had executed a similar, subsequent PAGA MOU, there would be no dispute.

18  Similarly, D2 showed it knew how to show its assent to future amendments or

19  agreements between the parties to the International Agreement.  *See e.g.*, Dkt. 21-

20  9, p. 7, at Art. III ("The parties further agree to any future increases made to the

21  current contribution amount" to the Carpenters International Training Fund).  It

22  also knew how to reject future "[A]ddenda to this Agreement" by clearly stating

23  that any such amendments "shall be reduced to writing."  *Id*. at Art. VII.  Here.

24  There are no facts submitted by Defendants that support an implied assent to the

25  PAGA MOU.  As such, the Court is prohibited from reading in assent where none

26  is demonstrated within the evidence provided.  *ML Direct, Inc. v. TIG Specialty*

27  *Ins. Co.*, 79 Cal. App. 4th 137, 142 (Cal. App. 2000).

28

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

**4. The PAGA MOU does not Fall within Article I of the International Agreement and such it does not Apply to D2 or Plaintiff.**

Assuming the International Agreement incorporates at least some parts of the CBA, the question then turns to, what are those parts?   Article I squarely addresses that inquiry and incorporates only the provisions of the CBA related to "contractual wages, fringe benefits, hours and other working conditions established between" the Union and the employer.  Dkt. 21-9, p. 6, Art. I.  The PAGA MOU is none of those things.   Rather, the PAGA MOU attempts to preclude an administrative agency of the State of California from bringing claims against the employer.  The PAGA MOU is procedural in nature.  The terms of the CBA that the International Agreement incorporates are substantive.

Nothing in Defendants' motion, uncontroverted facts, or its supporting evidence could plausibly support the contention That the PAGA MOU falls within Article I of the International Agreement.[4]

**5. Terra Wells' Declarations Misconstrue What, In Fact, is a "True and Correct Copy" of the CBA that was "Entered Into" on July 1, 2016.**

Underlying this Motion is the highly dubious contention that the July 1, 2016 is a living document that can be amended at any time in the future to create new obligations or restrictions that apply to non-signatories.  Defendants seek to accomplish this interpretation through its key witnesses, who declare that the January 1, 2016 CBA, as it existed when D2 signed the International Agreement is the functional and legal equivalent of the CBA that now exists, including any and all amendments added after its signing.  There is no support for this claim.

As an initial matter, Defendant's key witness, Terra Wells, at best, severely misconstrued what is, in fact, a "true and correct copy" of the CBA that was the

---

[4] Indeed, Defendants never address whether they argue that the PAGA MOU is tantamount to "contractual wages, fringe benefits, hours and other working conditions" as those terms are used in the International Agreement.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

sole justification for removing this action to this Court.   Dkt. 1-5.   In her Declaration in support of summary judgment, Ms. Wells states that the attached "**Exhibit A** is a true and correct copy of that CBA," which she describes in the immediately-preceding sentence as the CBA entered into "[o]n or about July 1, 2016." Wells MSJ Decl. Dkt. 21-5, ¶ 5.   Yet her "**Exhibit A**" is <u>not</u> the agreement that was entered into "on or about July 1, 2016;" it is ***substantially different***.   That much is evidenced by the Exhibit itself, which includes "Appendix O,"   (the PAGA MOU) and refers to the passage of AB 1654 in past-tense as follows "*WHEREAS*, Governor Jerry Brown sign**ed** Assembly Bill 1654 ("AB 1654") on September 19, 2018, which add**ed** section  2699.6 to the Labor Code." Dkt. 21-5, at p. 153 (emphasis added).

Ms. Wells' misrepresentation is clearly an objectionable legal opinion and is wholly undermined by documents that Plaintiff received in response to a Subpoena under Fed. R. Civ. P. 45 (the FRCP 45 Subpoena).   Plaintiff asked the union for, and received, documents that "altered," the CBA, "after it was originally agreed to" on July 1, 2016.   Specifically, Plaintiff's FRCP 45 Subpoena to the Southwest Regional Council of Carpenters and Local Unions ("SWRCC") demanded the production of:

> Any and all documents related to amendments, appendices, and related agreements ***that in any way altered*** the 2016-2022 "Southern California Master Labor Agreement between United General Contractors, Inc. and the Southwest Regional Council of Carpenters and Local Unions in the Twelve Southern California Counties and Nevada Affiliated with the United Brotherhood of Carpenters and Joiners of America," ***after it was originally agreed to*** by Ronald Tutor and Randy Thornhill ***on July 1, 2016***.

Karczewski Decl., ¶ 3, Ex. C (emphasis added)).   In response, SWRCC provided several documents, including the stand-alone version of what now appears as "Appendix O" (albeit, with signatures) in what Ms. Wells' incorrectly contends is a "true and correct copy" of the CBA that was "entered into" on July 1, 2016. Karczewski Decl., ¶ 4, Ex. D.

In other words, according to the SWRCC, Appendix O is <u>not</u>, as Ms. Wells a "true and correct copy" of the July 1, 2016 CBA.  To the contrary, according to the SWRCC, that Appendix O is a document that, *in fact* "altered" that CBA "after it was originally agreed to on July 1, 2016." (Karczewski Decl., 4, Ex. D.  She has since abandoned that position.  Defendants apparently have not.  In Paragraph 7 of Ms. Wells' declaration in support of this motion, she explains why the logic in her previous declaration was wrong:

> "At the time I executed my Declaration in support of Defendants' Notice  of Removal of Civil Action to Federal Court Pursuant to 28 U.S.C. §§ 1331, 1441 and 1446 on August 20, 2021, I was informed and believed that D2 is, and has been, a member of United General Contractors, Inc. since the CBA became effective on July 1, 2016.  I *based that belief* on my <u>understanding</u> that collective bargaining agreements can be negotiated directly by employers or by employer associations negotiating on behalf of their members.  *Since I signed that Declaration, I became aware* that D2 is bound by the CBA *because D2 entered into the International Agreemen*t attached as Exhibit B, discussed below."

*Compare* Wells' MSJ Decl., Dkt. 21-5, ¶ 7, *with* Wells' Removal Decl., Dkt. 1-5, ¶ 9).

Plaintiff and Ms. Wells now appear to disagree with Ms. Wells *since-abandoned* position that UGC's assent to the CBA could in any way bind D2.  As she stated in her Declaration supporting Removal:

> The terms and conditions of Plaintiff's employment as a Carpenter with D2 were governed by a CBA between United General Contractors, Inc. and the Southwest Regional Council of Carpenters and Local Unions in the Twelve Southern California Counties and Nevada Affiliated with the United Brotherhood of Carpenters and Joiners of America ("Union"), effective July 1, 2016 through the present.

(Wells' Removal Decl., Dkt. 1-5, ¶ 9). Plaintiff agrees with Ms. Wells' *new* position that D2 *could not have agreed* to any part of the CBA unless D2 expressly manifested its assent by signing the International Agreement.  In contrast, Defendants have held to the original, mistaken logic that signatures by UGC are binding as to D2.  In other words, although at some time between filing their removal in August 2021 and filing the present motion in November 2021,

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

14

Defendants have conceded that their theory of removal (that D2 is bound to the CBA by virtue of UGC's having signed it) was mistaken. Although Defendants do not outright rely on this same, admittedly flawed logic, it bears repeating that UGC is the _lone signatory_ other than the Union to the PAGA MOU. (Dkt 21-8, at p. 10-11).

Exactly what Defendants claimed substantiated the PAGA MOU's application to this case has been discussed between the parties for months. Indeed, in the first email correspondence raising the Section 2699.6 issue, Defendants' counsel explicitly referred to Ms. Wells' declaration in support of removal, stating "as we explained in Defendants' Notice of Removal, Mr. Melena's employment was subject to the CBA attached to the supporting Declaration of Terra Wells (copy attached for reference)." Karczewski Decl, ¶ 1, Ex. A. When pushed repeatedly on this issue, Defendants' counsel further explained that "the very first paragraph of the CBA states that the 'Agreement is entered into this first day of July, 2016, by and between the United General Contractors, Inc. negotiating on behalf of its respective eligible members," and continued "As Ms. Wells attested [in her removal declaration], D2 is one of the members on behalf of which United General Contractors, Inc. negotiated the CBA." Karczewski Decl, ¶ 2 Ex. B.

What remains is the awkward conclusion that the true reason why Defendants first believed that D2 was bound by that same PAGA MOU (inasmuch as D2 was previously–according to Wells–bound by the CBA by virtue of **UGC** having signed it), is the same reason they now believe D2 is bound, a logic that they have in other ways since abandoned, as admitted by Ms. Wells.

At the very least, Plaintiff should be afforded discovery on this issue. _See_ Karczewski Decl., _supra_, fn. 3, filed concurrently herewith. The Court may also wish to consider whether this matter was properly removed in the first instance.

### G. Plaintiff's PAGA Claims are Not Preempted by the LMRA

In determining whether LMRA § 301 preempts state law, courts must first

15

LAWYERS _for_ JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

consider "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a [collective bargaining agreement]. If the right exists solely as a result of the [collective bargaining agreement], then the claim is preempted." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th. Cir. 2007). To determine whether a right is independent of a collective bargaining agreement, a court considers "the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement [and] not whether a grievance arising from 'precisely the same set of facts' could be pursued." *Id.* (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)). Section 301 only preempts claims that are "founded directly on rights created by collective-bargaining agreements." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987).

If a plaintiff's right "exists independently of the [collective bargaining-agreement]," then the court "must still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.' " *Burnside*, 491 F.3d at 1059 (citing *Caterpillar*, 482 U.S. at 394). A state law right depends on a collective bargaining agreement if the court must "interpret" the agreement, whereas the right is independent of the collective bargaining agreement if the court need only "look to" the agreement. *Id.* at 1060 (citing *Livadas*, 512 U.S. at 125). The Ninth Circuit has stated that "the 'look to'/'interpret' distinction is 'not always clear or amenable to a bright-line test.'" *Id.* (citing *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001)). But the Ninth Circuit has provided guidance to courts considering this question: "[I]in the context of § 301 complete preemption, the term 'interpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'" *Kobold v. Good Samaritan Reg'l Med. Ctr*, 832 F.3d 1024, 1033 (9th Cir. 2016) (internal quotation marks omitted) (quoting *Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000)). Thus, to be preempted, Plaintiff's claims must depend on an interpretation of the Parties' CBA that involves an analysis more significant than

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

16

merely referencing the agreement

**1. Plaintiff's Labor Code Claims Are Not Preempted Because Defendants Are Not Parties To Nor Bound By The CBA.**

The CBA doesn't cover our claims (same argument as above, but broken down for each claim.)

**2. Assuming that D2 Is Bound by the CBA, Plaintiff's PAGA Claims are Not Preempted Under LMRA.**

      i.    <u>*Plaintiff's Meal Break Claims Are Not Preempted*</u>.

Plaintiff's meal break claims are not preempted because they are independent of the CBA and the meal period provisions under the CBA are the functional equivalent of what California statutory law requires. The CBA's meal period provision, states that "[w]hen employees work over five (5) hours without being provided with a one-half (1/2) hour meal period, they shall be paid an additional amount equal to one-half (1/2) hour pay." Dkt. 2-7, Art. IX, Sec. 903, at p. 40. "the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement [and] not whether a grievance arising from 'precisely the same set of facts' could be pursued." *Id.* (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)). Here, there is no difference between, on the one hand, the one hour of regular rate of compensation penalty that is assessed when an employee cannot take his/her meal period until after five hours versus, on the other hand, the *one half* hour of pay *at the double* time rate under the CBA. A grievance under law and a grievance under the CBA would exist under "precisely the same set of facts."

Second, while the Court may be called to refer to the CBA for wage rates in order to calculate damages owed to Plaintiff and aggrieved employees under California state law, mere reference to the CBA for wage payment calculations does not trigger preemption. Despite this, Defendant still argues the Court must analyze Plaintiff's "job title, union status, and seniority, in order to determine the

17

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

corresponding wage rate upon which meal premiums are based." [Dkt. 21-1, p. 27] This hypothetical argument is not enough; Defendants cannot merely provide a laundry list of provisions that they allege the Court must interpret to resolve Plaintiff's claims. Instead, Defendants must explain *why* interpretation, as opposed to mere reference to the CBA, is necessary. *Burnside, supra*, 491 F.3d at 1071 (rejecting preemption after a "cursory examination" of provisions in three different CBAs). That they do not do.

### *ii.*   <u>Plaintiff's Rest Break Claims Are Not Preempted</u>

Plaintiff's Rest Period claims are not preempted because the CBA contains no provision that provides for different rest period rights than those under statute. Defendants do not contest this. Instead, they loosely aver that the CBA "expressly provides for rest periods which are governed solely by the grievance and arbitration procedures set forth therein." Dkt. 21-1, at 27:25-26 (emphasis added and citing UMF 30-31, and 45-46). But that avoids the fact that there is no express provision creating rest period rights within the CBA, as the Court can readily ascertain with a cursory word search through the CBA. What Defendants mean by this statement is that although there is no express provision in the CBA conferring rest period rights, the grievance and arbitration procedures require that any rest period claim be remedied under the CBA's grievance procedures. But that is not what triggers preemption. Section 301 only preempts claims that are "founded directly on rights created by collective-bargaining agreements." Caterpillar, Inc. v. Williams, 482 U.S. 386, 394 (1987) (emphasis added). Here, there is no rest period right created by the CBA, and Defendants can point to none. That absence means that the California Labor Code confers the rest period rights that Plaintiff alleges in this lawsuit.

### *iii.* <u>Plaintiff's Overtime Claims Are Not Preempted</u>

Plaintiff's Overtime Claims are not preempted because the only

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

provision in the CBA that speaks to it, tracks exactly with what California Labor Code already requires.   Dkt. 21-7, Art. XVII, sec. 1805.   It states that, "[a]ll overtime Monday through Friday shall be at the rate of one and one-half (1½) the regular straight time hourly rate for the first four hours of over-time worked and shall be paid at double the straight time hourly rate after twelve hours of work." *Id.* The Court is not required to interpret or analyze what this provision states other than merely "referring"

> iv. <u>Plaintiff's Expense Reimbursement Claims Are Not Preempted</u>

Unlike Plaintiff's other Labor Code claims, Plaintiff concedes that his underlying Labor Code claims for business expense reimbursements might require some interpretation of the CBA.  But "Because the Court need only refer to the CBA to resolve all of Plaintiff's underlying Labor Code claims, 'the clarity of the agreements means that no further interpretation was required." *Matson v. United Parcel Service, Inc*., 840 F.3d 1126, 1135 (9th Cir. 2016).

> v. <u>Plaintiff's Wage Statement and Waiting Time Claims Are Not Preempted</u>

Defendants' theory on summary judgment, prior to any discovery being exchanged between the parties, is that Plaintiff's wage statement and waiting time claims are preempted because they are wholly derivative. This argument fails. Defendants cannot dispute that these rights are not conferred by the CBA, so preemption is not warranted on a direct violation theory.  Instead, they seek to confine Plaintiff to a derivative-only theory for which they have not satisfied their burden of showing that there is an absence of material fact here at this early stage.

**H. Defendants Violated this Court's Specific, Straightforward Orders by Noticing their Motion for 45 days after the Date of Service.**

By filing their moving papers on November 5, 2021 and unilaterally noticing

19

a date of December 20, 2021 for their motion, Defendants violated this Court's Standing Order (Dkt. 9), as well as its Civil Trial Scheduling Order (Dkt. 20).  The only apparent reason for that decision was to require Plaintiff's counsel to expend substantial efforts over the Thanksgiving holiday.

The Court's Standing Order provides that "[n]o motion shall be noticed for hearing for more than thirty-five (35) days after service of the motion unless otherwise ordered by the Court."  (Dkt. 9, Section 6(a), at p. 4:10-12).  Defendants' motion, in contrast, was noticed for *45 days after* the November 5, 2021 date of service.  Defendant did not seek or obtain any order from the Court that would trigger the "unless otherwise ordered by the Court" provision.  Accordingly, the December 20, 2021 noticed date violated Section 6(a) of this Court's Standing Order.

The Trial Scheduling Order further states that, with respect to Summary Judgment Motions, "[i]n virtually every case, the Court expects that the moving party will provide more than the minimum twenty-eight (28) day notice for such motions."  (Dkt. 20, Section II(A)(1), at p. 4:23-24).  It further states that with respect to Summary Judgment Motions, "[i]n the usual case, the parties should confer and agree on the date for setting such motions." (Dkt. 20, p. 2:27-28). Defendant did not meet and confer with Plaintiff on the date that it unilaterally set for the present Motion, and has not shown why this is an unusual case warranting that non-compliance.

As a result, in violation of two clear court orders, Defendants noticed a hearing date that triggered an opposition filing deadline on the Monday immediately following the Thanksgiving holiday weekend, requiring extensive work by Plaintiff's counsel over the same.  (*See* L-R 7-9 ("each opposing party shall … not later than twenty-one (21) days before the date designated for the hearing of the motion … serve upon all parties and file with the Clerk … the evidence upon which the opposing party will rely in opposition to the motion and a

20

brief but complete memorandum which shall contain a statement of all the reasons in opposition."). This could have been avoided if Defendants complied with either of the orders, or at least satisfied their basic meet and confer obligations.

Defendants' motion should be denied on this ground as well.

## III. CONCLUSION

Because Plaintiff's PAGA claims are neither exempted under Lab. Code § 2699.6 nor preempted by Section 301 of the LMRI, Defendant has failed to meet its initial burden under Fed. R. Civ. P. 56(a), in showing an absence of genuine issues of material fact regarding Plaintiff's claims, including whether Plaintiff has standing as an aggrieved employee to represent other allegedly aggrieved employees under California Labor Code § 2699(a)(i); *Kim v. Reins Int'l California, Inc.*, 459 P.3d 1123, 1127 (Cal. 2020).

Dated: November 29, 2021                                 **LAWYERS *for* JUSTICE, PC**

                                        By:    _____
                                               Edwin Aiwazian
                                               Jacob Karczewski
                                               Charles T. Sweeny

                                               *Attorneys for* Plaintiff

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203